## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>DEPARTMENT OF DEFENSE, *et al.*,<br><br>    *Defendants*. | Case No. 25-cv-11740 |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
## REGARDING *TRUMP v. CASA* AND THE SCOPE OF RELIEF

Per the Court's July 3, 2025 order, Plaintiffs submit this supplemental memorandum regarding the Supreme Court's decision in *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025), and Plaintiffs' requested preliminary relief.  In *CASA*, the Court limited federal courts' authority to enter "universal injunctions" under the Judiciary Act of 1789, while leaving remedies under the Administrative Procedure Act ("APA") untouched. *Id.* at *4, *8 n.10. Consistent with *CASA*, Plaintiffs request that the Court delay the effective date of the Rate Cap Policy under the APA, 5 U.S.C. § 705.  In the alternative, and consistent with *CASA*'s limits on non-APA relief, the Court could issue a preliminary injunction limited to the parties in this case, *i.e.*, Plaintiffs and the member universities of Plaintiffs Association of American Universities, Association of Public and Land-grant Universities, and American Council on Education.

## ARGUMENT

I. **Consistent with *CASA*, this Court should delay the effective date of the Rate Cap Policy under Section 705 of the APA.**

Consistent with *CASA*, which expressly left APA remedies unaddressed, Plaintiffs ask this Court to postpone the effective date of the Rate Cap Policy until it enters final judgment. That would provide preliminary relief that directly parallels the APA relief available at final judgment—namely, vacatur of the Policy. Section 705 of the APA provides that, at a preliminary stage in the proceedings and "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury," courts may "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights." 5 U.S.C. § 705; *see, e.g.*, *Am. Fed'n of Tchrs. v. Dep't of Educ.*, No. 25-CV-628, 2025 WL 1191844, at *23-24 (D. Md. Apr. 24, 2025). The Supreme Court in *CASA* did not disturb the availability of interim relief under Section 705. Indeed, the Court expressly stated that its decision did not touch on APA remedies. *CASA*, 2025 WL 1773631, at *8 n.10. As Justice Kavanaugh noted in his concurrence, courts may, after *CASA*, still "grant or deny the functional equivalent of a universal injunction" by "preliminarily setting aside or declining to set aside an agency rule under the APA." *Id.* at *21 (Kavanaugh, J., concurring). That makes sense because *CASA* interpreted the scope of a court's equitable authority under the Judiciary Act of 1789, which has no bearing on a court's separate and independent authority to vacate and set aside agency actions under the APA.

This APA remedy should operate on the Policy as a whole—not just as to the parties. "[T]he scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), *cert. granted in part on other grounds*, 145 S. Ct. 1039 (2025) (declining to grant review

on question addressed to remedy). That is because, "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed," *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 831 (2024) (Kavanaugh, J., concurring) (citation omitted), and it "would make little sense to limit the stay of a [Policy] that is likely procedurally and substantively defective in numerous respects to the parties in this case," *Am. Fed'n of Tchrs*, 2025 WL 1191844, at *24.

Although Plaintiffs sought a TRO as to the Policy's application to new grants, under the APA, the Policy should be treated as the single, unified whole that it is. Success on the merits of any one of Plaintiffs' claims would require that the Policy be set aside in its entirety under 5 U.S.C. § 706; the Policy as a whole is subject to the same core legal deficiencies and works the same fundamental harms on universities; and DOD has agreed to delay the Policy as a whole should the Court enjoin it as to new grants. District courts regularly postpone the effective date of agency actions in their entirety, even where plaintiffs—unlike Plaintiffs here—challenge only portions of those actions. *See, e.g.*, *Am. Fed'n of Tchrs.*, 2025 WL 1191844, at *23 (deeming it "appropriate … to temporarily stay the [challenged] Letter" in its entirety under Section 705, even when plaintiffs challenged only certain requirements imposed by the Letter); *Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 82 (D.D.C. 2020) ("conclud[ing] that [the court] should stay the effective date of [a] Rule in its entirety" where plaintiffs challenged certain provisions that were "intertwined" with the unchallenged portions); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 496 F. Supp. 3d 600, 611-12 (D. Mass. 2020) (similar). Here, following that well-trod approach is particularly appropriate because it would be so plainly irrational to impose a 15% rate cap only on existing grants and not on new grants.

3

Courts routinely grant requests for interim relief under Section 705 where the plaintiffs have satisfied the familiar four-factor test for preliminary injunctive relief.[1] Here, Plaintiffs have demonstrated those factors are met as to the aspects of the Rate Cap Policy that affect future grants. First, Plaintiffs have demonstrated a strong likelihood of success on the merits. *See* TRO Memo at 21-37; TRO Reply at 4-11.[2] Second, Plaintiffs' declarations show that the Policy will cause them and their members irreparable harm (including as to both new and existing grants).[3] *See* Mem. in Supp. of Pls.' Emergency Mot. for a TRO, Doc. No. 39 ("TRO Memo"), at 38-44; Reply Mem. in Supp. of Pls.' Emergency Mot. for a TRO, Doc. No. 61 ("TRO Reply"), at 11-14. Third, for the reasons discussed in Plaintiffs' briefs, the balance of the equities and public interest also overwhelmingly favor postponement. *See* TRO Memo at 44-45; TRO Reply at 14. And for the reasons given above, the aspects of the Policy affecting existing grants should be treated the same as the aspects affecting future grants.

---

[1] *See, e.g.*, *Nat'l TPS All. v. Noem*, No. 25-CV-01766, 2025 WL 1547628, at *2-5 (N.D. Cal. May 30, 2025); *Am. Fed'n of Tchrs.*, 2025 WL 1191844, at *23; *Int'l Fresh Produce Ass'n v. U.S. Dep't of Lab.*, 758 F. Supp. 3d 575, 585-94 (S.D. Miss. 2024); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 496 F. Supp. 3d 600, 611 (D. Mass. 2020).

[2] The Rate Cap Policy's legal defects apply equally to both new and existing awards. DOD's decision to unilaterally impose a 15% indirect cost rate contradicts—for new and existing awards alike—the regulations governing indirect cost rates. *See* TRO Memo at 22-28; TRO Reply at 4-7. For existing as well as new awards, DOD's abandonment of the settled institution-specific negotiated rate framework for an across-the-board application of a 15% rate, with only a few sentences of irrational explanation, is arbitrary and capricious. *See* TRO Memo at 28-31; TRO Reply at 7-10. And for both sets of awards, DOD lacks statutory authority to jettison the negotiated rate regime for a one-size-fits all rate that has no relationship to any estimate of actual indirect costs. *See* TRO Memo at 34-37; TRO Reply at 10-11.

[3] The same declarations explain that the aspects of the Rate Cap Policy that affect existing grants "would end or seriously jeopardize" current research supported by such grants. Brown Decl. ¶¶ 11-12; *see also* Caltech Decl. ¶ 17 ("Many of Caltech's current research projects will be forced to slow down or cease abruptly if we … have our awards terminated if we will not accept a 15% rate cap."); UC Decl. ¶ 15 (similar); CU Boulder Decl. ¶ 15 (similar); CSU Decl. ¶ 17 (similar); Duke Decl. ¶ 9 (similar); UIUC Decl. ¶ 18 (similar); KU Decl. ¶ 15 (similar); KUMC Decl. ¶ 20 (similar); OSU Decl. ¶ 8 (similar); UW Decl. ¶ 18 (similar); USC Decl. ¶ 8 (similar); Pitt Decl. ¶ 8 (similar); Penn Decl. ¶ 8 (similar); Cornell Decl. ¶¶ 17-18 (similar); MIT Decl. ¶ 12.

Indeed, the government has recognized that the Rate Cap Policy is and must be a single unified action:  DOD voluntarily delayed the entire Policy, including its applications to existing grants, after this Court granted a TRO blocking its application to future grants.  *See* Defs.' Notice in Response to the Court's June 17, 2025 Order (Doc No. 48), Doc. No. 52, at 2 ("DoD will pause efforts to renegotiate rate caps for existing awards to institutions of higher education for the duration of the TRO.").  And if the Court now issues a stay of the Policy or a preliminary injunction affecting new grants, DOD's counsel has represented that it will continue that pause pending the Court's decision on summary judgment.

II.    **In the alternative, consistent with *CASA*, the Court could issue a preliminary injunction limited to the parties but structured to provide Plaintiffs complete relief.**

A preliminary injunction affording relief to Plaintiffs is also fully consistent with *CASA*. There, the Supreme Court reaffirmed district courts' equitable authority to "administer complete relief *between the parties*" via "party-specific injunctions."  2025 WL 1773631, at *11 (citation omitted).  And it left untouched district courts' "authority to grant relief to the … members" of organizational plaintiffs.  *Id.* at *4 n.2.  Consistent with *CASA*, then, this Court could issue the preliminary injunction Plaintiffs requested as to Plaintiffs and their members, *i.e.*, an injunction prohibiting Defendants from implementing the immediately effective portions of the Rate Cap Policy as to Plaintiffs and their members as outlined below.  If the Court delays the Rate Cap Policy's effective date under the APA, however, then this additional relief would be unnecessary.[4]

---

[4] At this time, Plaintiffs would not seek any broader injunctive relief if the Court proceeded via injunction instead of under the APA.  If the facts on the ground change—if, for example, the government begins renegotiating existing agreements with Plaintiffs and their members and insisting that they agree to a 15% indirect cost rate, or if it becomes clear that the Policy must be more broadly enjoined to prevent competitive harms to Plaintiffs and afford them complete relief—Plaintiffs will confer with Defendants to determine whether an expanded injunction is necessary.

Importantly, "complete relief" from the Rate Cap Policy would mean Plaintiffs must not be required to accept a 15% indirect cost rate instead of their negotiated rate under any circumstance. That would mean an injunction must cover awards or proposals that involve Plaintiffs or their members in any manner, including but not limited to as sub-recipients or collaborators, and must prohibit DOD from rejecting or treating adversely proposals for funding submitted by Plaintiffs or their members at negotiated rates rather than the 15% rate. This, too, is consistent with *CASA*, which recognized that "party-specific injunctions" tailored to afford plaintiffs "complete relief" may "sometimes advantage nonparties." *Id.* at *11 (alteration and internal quotation marks omitted).

## CONCLUSION

Plaintiffs respectfully request that this Court postpone the effective date of the Rate Cap Policy under 5 U.S.C. § 705.

Alternatively, Plaintiffs request that the Court issue a preliminary injunction prohibiting Defendants, their agents, and anyone acting in concert or participation with Defendants from implementing, instituting, maintaining, or giving effect to the immediately effective portions of the Rate Cap Policy, *i.e.*, those portions implementing a 15% cap for all awards issued to Plaintiffs or their members on or after June 12, 2025, including but not limited to rejecting or treating adversely proposals for DOD funding submitted at negotiated rates. In order to provide complete relief among the parties, this includes awards or proposals that involve any Plaintiffs or members in any manner, including but not limited to as sub-recipients or collaborators.

Whether the Court enters relief under Section 705 or pursuant to its equitable authority, Plaintiffs request that the Court order Defendants to provide all funding recipients affected by the Rate Cap Policy written notice of the Court's order and notify the Court when they have done so.

Finally, the parties have agreed to proceed to summary judgment on the following schedule:

- July 18, 2025: Defendants' Production of Administrative Record;

- July 28, 2025: Plaintiffs' Motion for Summary Judgment;

- August 7, 2025: Defendants' Response and Cross Motion for Summary Judgment;

- August 14, 2025: Plaintiffs' Response and Reply in Support of Motion for Summary Judgment;

- August 21, 2025: Defendants' Reply in Support of Motion for Summary Judgment;

- As soon thereafter as is convenient for the Court: Hearing on the Parties' Cross Motions for Summary Judgment.

As Plaintiffs have communicated to the government, Plaintiffs' consent to this course of action is premised on the government's representation that it will not enforce the Rate Cap Policy in any manner if this Court enters preliminary relief.

In the event that the Court does not grant an injunction or stay by July 18, 2025, the Parties respectfully request an opportunity to confer and submit a revised proposal about how to proceed.

*[signatures on following page]*

Dated: July 9, 2025

Respectfully submitted,

JENNER & BLOCK LLP
By: */s/ Ishan Bhabha* _____

Ishan K. Bhabha (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice*)
Lauren J. Hartz (*pro hac vice*)
Elizabeth Henthorne (*pro hac vice*)
Zachary C. Schauf (*pro hac vice*)
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
IBhabha@jenner.com
LHarrison@jenner.com
LHartz@jenner.com
BHenthorne@jenner.com
ZSchauf@jenner.com

*Attorneys for Association of American
Universities, American Council on
Education, Association of Public and
Land-grant Universities, AZ Board of
Regents on Behalf of Arizona State
University, Brown University, California
Institute of Technology, The Regents of the
University of California, Cornell
University, The Board of Trustees of the
University of Illinois, The Johns Hopkins
University, Massachusetts Institute of
Technology, and University of Pittsburgh
of the Commonwealth System of Higher
Education*

CLEMENT & MURPHY, PLLC
By: */s/ Paul D. Clement* _____

Paul D. Clement (*pro hac vice*)
James Y. Xi (*pro hac vice*)
Kyle R. Eiswald (*pro hac vice*)
706 Duke Street
Alexandria, VA 22314
Tel: (202) 742-8900
paul.clement@clementmurphy.com
james.xi@clementmurphy.com
kyle.eiswald@clementmurphy.com

*Attorneys for Association of American Universities,
Association of Public and Land-grant Universities,
and American Council on Education*

ANTHONY G. BROWN
Attorney General of Maryland

By: */s/ Michael Drezner* _____
Michael Drezner (*pro hac vice*)
  *Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
Tel: (410) 576-6959
mdrezner@oag.state.md.us

*Attorney for University of Maryland, College Park*

NICHOLAS W. BROWN
Attorney General of Washington

By: */s/ Jessica Creighton* _____
Jessica L. Creighton (*pro hac vice*)
  *Assistant Attorney General*
Office of the Attorney General of
Washington
University of Washington Division
4333 Brooklyn Avenue NE, MS 359475
Seattle, WA 98195
(206) 543-4150
jessica.creighton@atg.wa.gov

*Attorney for University of Washington*

PHILIP J. WEISER
Attorney General of Colorado

By: */s/ Lauren Peach* _____
Lauren Peach (*pro hac vice*)
  *First Assistant Attorney General*
Michael McMaster (*pro hac vice*)
  *Assistant Solicitor General*
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6484, (720) 508-6156
Lauren.Peach@coag.gov
Michael.McMaster@coag.gov

*Attorneys for the Board of Governors of the
Colorado State University System Acting by and
through Colorado State University*

## CERTIFICATE OF SERVICE

Counsel for Plaintiffs certify that they have submitted the foregoing document with the clerk of court for the District of Massachusetts, using the electronic case filing system of the Court. Counsel for Plaintiffs hereby certify that they have served all parties electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

/s/ *Paul D. Clement*
Paul D. Clement (*pro hac vice*)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
Tel: (202) 742-8900
paul.clement@clementmurphy.com

Dated:  July 9, 2025