# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*,

       *Plaintiffs*,

         v.

DEPARTMENT OF DEFENSE, *et al.*,

       *Defendants*.

Case No. 25-cv-11740

## PLAINTIFFS' REPLY REGARDING *TRUMP v. CASA* AND THE SCOPE OF RELIEF

This Court has clear authority to postpone the effective date of agency action pursuant to Congress's unambiguous mandate in the Administrative Procedure Act ("APA"), and nothing in the government's memorandum demonstrates otherwise. It cannot rely on *Trump v. CASA, Inc.*, because while that case limited federal courts' authority to enter "universal injunctions" under the Judiciary Act of 1789, it expressly left undisturbed remedies under the APA. No. 24A884, 2025 WL 1773631 at *4, *8 n.10 (U.S. June 27, 2025). The government's other arguments about the APA are contradicted by statutory text, precedent, and even the legislative history to which the government resorts. Plaintiffs thus continue to request that this Court delay the effective date of the Rate Cap Policy under the APA, 5 U.S.C. § 705. In the alternative, the Court could issue a preliminary injunction limited to the parties in this case, as outlined in Plaintiffs' supplemental memorandum. *See* Pls.' Suppl. Mem., Doc. No. 67. The government fails to muster any serious argument that such an injunction would be inappropriate—or that a bond should issue—here.

## ARGUMENT

### I.    *CASA* Did Not Limit the Scope of Relief Available Under the APA.

Section 705's text and precedent interpreting it make clear that it provides relief parallel to that available under the APA at final judgment: vacatur of the Policy on an action-wide, not party-specific, basis. *See* 5 U.S.C. §§ 705, 706; *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), *cert. granted in part on other grounds*, 145 S. Ct. 1039 (2025). The statute provides that, at a preliminary stage in the proceedings and "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury," courts may "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The text authorizes a stay of the effective date "*of an agency action*"—full stop—not a stay limited to the parties before the court.

The government's proposed reading of Section 705 would be a "radical rewrite … of what's been standard administrative law practice" for decades. Transcript of Oral Argument at 54-55, *United States v. Texas*, 599 U.S. 670 (2023) (No. 22-58) (Kavanaugh, J.); *see also id.* at 35 (Roberts, C.J.) (characterizing the idea that APA remedies should be party specific as "fairly radical and inconsistent with" longstanding practice); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826-27 (2024) (Kavanaugh, J., concurring) (similar); *Harmon v. Thornburgh*, 878 F.2d 484, 494 (D.C. Cir. 1989) (similar).  Indeed, the Supreme Court itself has stayed agency actions in their entirety—not limited to the parties—pending final resolution of challenges to those actions. *E.g.*, *West Virginia v. EPA*, 577 U.S. 1126 (2016) (mem.).

Nothing in *CASA* disturbs this settled law. To the contrary, the Supreme Court was very clear that its decision did not apply to or limit remedies available under the APA:  The Court

expressly stated that its decision did not touch on APA remedies, *CASA*, 2025 WL 1773631, at *8 n.10, and Justice Kavanaugh in concurrence explicitly reasoned that courts still can "grant or deny the functional equivalent of a universal injunction" by "preliminarily setting aside or declining to set aside an agency rule under the APA," *id*. at *21 (Kavanaugh, J., concurring). Nor could *CASA* be understood otherwise, even absent these express statements: The Judiciary Act of 1789—on which the Court based its ruling as to universal injunctions—has no bearing on a court's authority to stay or vacate and set aside agency actions under an entirely separate statute, the APA.

The government's brief is—unsurprisingly—silent on *CASA*'s treatment of APA remedies, instead mounting an essentially unrelated challenge to the well- and long-settled availability of universal relief under the APA. That is a fight the government can take to the Supreme Court another day. But even on its own terms, the government's argument is unpersuasive.

To start, Section 705's legislative history sheds no light on the appropriate scope of relief here. It is unsurprising that Congress noted in 1946 that Section 705 relief would "normally, if not always, be limited to the parties complainant," H.R. Rep. No. 79-1980, at 43 (1946): Because the vast majority of agency actions at that time were adjudicatory orders, *see* Ernest Gellhorn & Glen O. Robinson, *Rulemaking "Due Process": An Inconclusive Dialogue*, 48 U. Chi. L. Rev. 201, 202 & n.6 (1981), postponing the effective date would necessarily only reach the parties to that adjudication. And Congress explicitly recognized that it would "not always" be the case, depending on the nature of the agency action at issue. H.R. Rep. 79-1980, at 43. When agencies did act via rule instead of adjudication, Congress anticipated that courts would review those rules' validity and set invalid rules aside in their entirety. *See, e.g.*, *id.* at 42 (noting that "[d]eclaratory judgment procedure[] … may be utilized to determine … the validity … of a rule").

Caselaw does not get the government any further. It first cites two cases that are both irrelevant and unremarkable—the fact that some early cases *denied* relief under Section 705 says nothing about whether relief under that provision runs against the policy or the parties. *See Hamlin Testing Lab'ys, Inc. v. U.S. Atomic Energy Comm'n*, 337 F.2d 221, 221 (6th Cir. 1964); *TWA v. Civ. Aeronautics Bd.*, 184 F.2d 66, 69–70 (2d Cir. 1950). *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024), which interpreted language in an entirely unrelated statute, is also of little relevance—all the more so given that the National Labor Relations Act's provision for "temporary relief" lacks the parallel to vacatur as ultimate relief that characterizes Section 705. And the fact that courts look to the preliminary-injunction factors to determine whether relief under Section 705 is warranted sheds no light on the scope of relief where, as here, relief is appropriate.

The fact that the government cannot locate any on-point authority is unsurprising. When Congress passed the APA, courts did sometimes issue action-wide rather than party-specific relief. *See* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1147-48 (2020) (discussing *United States v. Baltimore & Ohio R.R. Co.*, 293 U.S. 454 (1935), which affirmed an order from a three-judge court that an ICC rule be "vacated, set aside, and annulled" and its enforcement "perpetually enjoined"); *CBS v. United States*, 316 U.S. 407 (1942) (continuing three-judge court's stay of regulations' enforcement as to parties and nonparties alike pending review of the merits). Reading Section 705 to allow courts to continue doing precisely that thus does not, as the government claims, "fashion new rules of intervention for District Courts," Defs.' Suppl. Mem., Doc. No. 66, at 4 (quoting *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974)), or otherwise go beyond what Congress would have understood courts' remedial authority to be when it enacted the APA. Even to the extent Section 705 is understood to authorize courts to issue relief that departs from equitable principles, Congress has exactly that ability. *See Grupo Mexicano de Desarrollo,*

*S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 329 (1999) (noting that this Court "leaves any substantial expansion of past [equity] practice to Congress").

## II.    The Parties Agree that an Injunction Providing Plaintiffs Complete Relief is Appropriate.

If the Court elects not to issue relief under Section 705, Plaintiffs alternatively seek a preliminary injunction prohibiting Defendants from implementing the immediately effective portions of the Rate Cap Policy as to Plaintiffs and their members. Pls.' Suppl. Mem. at 5. The parties agree that such an injunction should be limited to "administer[ing] complete relief between the parties." Defs.' Suppl. Mem. at 3 (quoting *CASA*, 2025 WL 177631, at \*11). The parties also agree that such an injunction must prohibit the government from, *inter alia*, "rejecting or treating adversely proposals for DOD funding submitted at universities' negotiated rates rather than the 15% rate." *Id.* (quoting Doc. No. 13 at 2). As Plaintiffs have previously argued, *see* Pls.' Suppl. Mem. at 6, such an injunction must also reach awards or proposals that involve Plaintiffs or their members as sub-recipients or collaborators.

Any further restrictions the government seeks to impose on the scope of injunctive relief are unwarranted. The government argues in passing that the Court may "at most" grant preliminary injunctive relief "only with respect to the named plaintiffs and the members of associational plaintiffs that have established standing and demonstrated irreparable harm," Defs.' Suppl. Mem. at 3, but they offer no authority for that assertion. Certainly, *CASA* did not impose such a requirement. Instead, *CASA* expressly left associational standing and relief for members of associational plaintiffs untouched. 2025 WL 1773631, at \*4 n.2. The Court should decline the government's half-hearted invitation to make new law and, if it enters injunctive relief, issue an injunction as requested by Plaintiffs in their supplemental memorandum.

### III.    The Court Need Not Impose a Bond.

"The APA has no bond requirement." *Am. Fed'n of Tchrs. v. Dep't of Educ.*, No. CV 25-628, 2025 WL 1191844, at *23 n.14 (D. Md. Apr. 24, 2025); *see Mich. Citizens for an Indep. Press v. Thornburgh*, No. CIV.A. 88-2322, 1988 WL 90388, at *8 & n.12 (D.D.C. Aug. 17, 1988). As one court has noted, "in the U.S. District Court for the District of Columbia, where preliminary relief under the APA is most frequently issued, this principle is so well-established that bond is rarely—if ever—discussed in Section 705 decisions." *Am. Fed'n of Tchrs*, 2025 WL 1191844, at *23 n.14. In any event, courts retain "substantial discretion" on the issue of bond in the preliminary-injunction context, *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc*., 925 F.2d 6, 9 (1st Cir. 1991), including "to require no bonds," *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (quotation marks omitted), *stayed*, No. 20-5357, 2021 WL 9100552 (D.C. Cir. Jan. 29, 2021), *remanded on other grounds*, No. 20-5357, 2022 WL 17246563 (D.C. Cir. Oct. 17, 2022). For the reasons given in Plaintiffs' TRO reply, no bond is warranted here.  Pls.' Reply Mem. in Supp. of Emergency TRO at 15, Doc. No. 61.

### CONCLUSION

Plaintiffs respectfully request that this Court postpone the effective date of the Rate Cap Policy under 5 U.S.C. § 705. Alternatively, Plaintiffs request that the Court issue a preliminary injunction as described in their opening supplemental memorandum. Whether the Court enters relief under Section 705 or pursuant to its equitable authority, Plaintiffs request that the Court order Defendants to provide all funding recipients affected by the Rate Cap Policy written notice of the Court's order and notify the Court when they have done so.

Dated: July 11, 2025                     Respectfully submitted,


JENNER & BLOCK LLP                       CLEMENT & MURPHY, PLLC
By: */s/ Ishan K. Bhabha*                By: */s/ Paul D. Clement*

Ishan K. Bhabha (*pro hac vice*)         Paul D. Clement (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice*)     James Y. Xi (*pro hac vice*)
Lauren J. Hartz (*pro hac vice*)         Kyle R. Eiswald (*pro hac vice*)
Elizabeth Henthorne (*pro hac vice*)     706 Duke Street
Zachary C. Schauf (*pro hac vice*)       Alexandria, VA 22314
1099 New York Avenue, NW                 Tel: (202) 742-8900
Suite 900                                paul.clement@clementmurphy.com
Washington, DC 20001                     james.xi@clementmurphy.com
Tel: (202) 639-6000                      kyle.eiswald@clementmurphy.com
IBhabha@jenner.com
LHarrison@jenner.com                     *Attorneys for Association of American Universities,*
LHartz@jenner.com                        *Association of Public and Land-grant Universities,*
BHenthorne@jenner.com                    *and American Council on Education*
ZSchauf@jenner.com
                                         ANTHONY G. BROWN
*Attorneys for Association of American*  Attorney General of Maryland
*Universities, American Council on*
*Education, Association of Public and*   By: */s/ Michael Drezner*
*Land-grant Universities, AZ Board of*   Michael Drezner (*pro hac vice*)
*Regents on Behalf of Arizona State*        *Senior Assistant Attorney General*
*University, Brown University, California*  Office of the Attorney General
*Institute of Technology, The Regents of the*  200 Saint Paul Place
*University of California, Cornell*       Baltimore, MD 21202
*University, The Board of Trustees of the*  Tel: (410) 576-6959
*University of Illinois, The Johns Hopkins*  mdrezner@oag.state.md.us
*University, Massachusetts Institute of*
*Technology, and University of Pittsburgh*  *Attorney for University of Maryland, College Park*
*of the Commonwealth System of Higher*
*Education*

NICHOLAS W. BROWN
Attorney General of Washington

By: */s/ Jessica L. Creighton*
Jessica L. Creighton (*pro hac vice*)
  *Assistant Attorney General*
Office of the Attorney General of
Washington
University of Washington Division
4333 Brooklyn Avenue NE, MS 359475
Seattle, WA 98195
(206) 543-4150
jessica.creighton@atg.wa.gov

*Attorney for University of Washington*

PHILIP J. WEISER
Attorney General of Colorado

By: */s/ Lauren Peach*
Lauren Peach (*pro hac vice*)
  *First Assistant Attorney General*
Michael McMaster (*pro hac vice*)
  *Assistant Solicitor General*
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6484, (720) 508-6156
Lauren.Peach@coag.gov
Michael.McMaster@coag.gov

*Attorneys for the Board of Governors of the*
*Colorado State University System Acting by and*
*through Colorado State University*

## CERTIFICATE OF SERVICE

Counsel for Plaintiffs certify that they have submitted the foregoing document with the clerk of court for the District of Massachusetts, using the electronic case filing system of the Court. Counsel for Plaintiffs hereby certify that they have served all parties electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

/s/ *Paul D. Clement*
Paul D. Clement (*pro hac vice*)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
Tel: (202) 742-8900
paul.clement@clementmurphy.com

Dated: July 11, 2025