UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*,

    *Plaintiffs*,

v.

DEPARTMENT OF DEFENSE, *et al.*,

    *Defendants*.

Case No. 25-cv-11740

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
REGARDING *NATIONAL INSTITUTES OF HEALTH v. AMERICAN PUBLIC HEALTH
ASSOCIATION***

In *National Institutes of Health v. American Public Health Association* (*"APHA"*), the Supreme Court squarely held what Plaintiffs here have always argued: When litigants challenge agency grantmaking policies as violating governing regulations and statutes, those challenges belong in district court. *APHA* rejected the government's arguments that such challenges to agency policies belong in the Court of Federal Claims ("CFC") simply because they have some "relat[ion] to grants"—and it denied the government's request for a stay of a decision vacating such a policy. *Nat'l Insts. of Health v. APHA*, No. 25A103, 2025 WL 2415669, at *1 (U.S. Aug. 21, 2025) (per curiam); *id.* at *1-2 (Barrett, J., concurring in the partial grant of the application for stay).

This case is exactly the type of challenge *APHA* greenlighted:  It concerns the Department of Defense's ("DOD") policy, set forth in the Michael Memo and the Hegseth Memo, slashing indirect cost rates across the board.  *See* Dkt. 72-5 ("Hegseth Memo"); Dkt. 72-6 ("Michael Memo").  And *APHA*'s other holding—that certain challenges to the termination of individual grants likely belonged in the CFC—did little more than reaffirm the Court's order in *Department*

*of Education v. California*, 145 S. Ct. 966 (2025) (per curiam), which Plaintiffs have already distinguished. That aspect of *APHA* has no relevance here. Unlike in *APHA*, Plaintiffs do not seek to revive already-terminated grants or to recover past-due sums.

## ARGUMENT

As Plaintiffs have explained, district courts have jurisdiction to award all the relief Plaintiffs seek in this case under the Administrative Procedure Act ("APA"). That statute authorizes district courts to provide "relief other than money damages" to persons suffering legal wrong, 5 U.S.C. § 702, including by "hold[ing] unlawful and set[ting] aside agency action," *id.* § 706(2). Those review provisions empower Article III courts to perform a core constitutional function—"enforc[ing] … statutory [and regulatory] mandate[s]." *Bowen v. Massachusetts*, 487 U.S. 879, 900 (1988). And as the Supreme Court has long made clear, and recently reaffirmed in *California*, "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *California*, 145 S. Ct., at 968 (quoting *Bowen*, 487 U.S. at 910). To the contrary, "[s]pecific relief" under the APA "will, of course, often result in the payment of money from the federal treasury." *Bowen*, 487 U.S. at 894, 900 (quoting *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985) (Bork, J.)). That consequence does not transform an APA suit into one for money damages. *California*, 145 S. Ct. at 968; *see Bowen*, 487 U.S. at 894. Here, Plaintiffs seek prototypical relief appropriate for district courts under the APA, including vacatur of the Rate Cap Policy because it violates "statutory [and regulatory] mandate[s]." *Bowen*, 487 U.S. at 900.

The Supreme Court's decision in *APHA* confirms that Plaintiffs can obtain this relief and that there is no special rule for challenges to rules and policies that affect government disbursements. *APHA* concerned challenges to agencywide policies and resulting grant

terminations. 2025 WL 2415669, at *1 (Barrett, J., concurring). The National Institutes of Health ("NIH") issued guidance documents that described funding priorities, specified that research on certain subjects would be ineligible for funding, and provided that awards that did not meet those criteria would be terminated. *Id.*; *APHA v. Nat'l Insts. of Health* ("*APHA I*"), No. 25-cv-10787, 2025 WL 1822487, at *6-11 (D. Mass. July 2, 2025). NIH then terminated grants in accordance with those guidance documents. *APHA*, 2025 WL 2415669, at *1 (Barrett, J., concurring). Two sets of plaintiffs sued, "challenging the guidance documents and their individual grant terminations under the [APA]." *Id.* After the plaintiffs obtained vacatur of the challenged actions in district court and the First Circuit denied a stay, the government sought a stay from the Supreme Court. The Court stayed the district court's judgment insofar as it vacated individual grant terminations and thus effectively reinstated those individual grants. *Id.* at *1 (per curiam).[1] But it rejected the government's request to stay the district court's vacatur of the guidance documents.

Justice Barrett in her controlling concurrence explained why challenges to such policies belong in district court, turning aside the same arguments the government has made in this case (and many others) trying to shunt every funding-related case to the CFC: "Plaintiffs frequently seek vacatur" of agency policies under the APA. *Id.* at *2 (Barrett, J., concurring). And the fact that such polices "relate[] to grants does not transform" such challenges into "claim[s] founded upon a contract that only the CFC can hear." *Id.* (internal quotation marks and alteration omitted). So, Justice Barrett ended, "the District Court was likely correct to conclude that it had jurisdiction to entertain an APA challenge to the guidance" and that the CFC is not "the right forum for that claim." *Id.* Four other Justices reiterated that point, emphasizing that "[t]his relief—which has

---

[1] In particular, the Court stayed the paragraphs of the district court's order that had "[d]eclared" the challenged "Grant Terminations" arbitrary and capricious and "vacated" them. No. 25-cv-10787, 2025 WL 1747128, at *2 (D. Mass. June 23, 2025); *see APHA*, 2025 WL 2415669, at *1 (per curiam).

prospective and generally applicable implications beyond the reinstatement of specific grants—falls well within the scope of the District Court's jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*" *Id.* at *3 (Roberts, C.J., concurring in part and dissenting in part).

This case involves only that same type of permissible claim and seeks the same type of permissible non-monetary relief.  Plaintiffs challenge DOD's across-the-board Rate Cap Policy as contravening DOD's statutes and regulations as well as the APA.  And as in *APHA*, Plaintiffs can obtain vacatur and related relief against that policy without trespassing on the CFC's exclusive jurisdiction over claims founded on contract and seeking contractual remedies.  *See, e.g.*, *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982).  Indeed, the government's central argument here—that Plaintiffs' claims are "contractual at their core" simply because Plaintiffs have "grant agreements with DOD" and the Rate Cap Policy relates to those agreements, Dkt. 82 (Reply to Response Cross Motion for Summary Judgment), at 2—is a carbon copy of the argument that Justice Barrett and a majority of the Court rejected.  Equally at war with *APHA* is the government's argument that the relief Plaintiffs have sought is inconsistent with the government's supposed "inherent common law contractual right to terminate (or breach) the existing contracts." *Id.* at 4.  Private parties contemplating a contractual breach are generally not limited by binding regulations or statutes that place independent obligations upon agencies.  And the central teaching of *Bowen*, as recently reaffirmed by the Supreme in *California* and then *APHA*, is that district courts can enforce those obligations—and that when they do, they are enforcing regulatory and statutory obligations, not awarding "specific performance for breach of contract." *Id.* (quoting *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989)); *California*, 145 S. Ct. at 968.

The part of the *APHA* decision staying the vacatur of individual grant terminations, by contrast, does little more than reaffirm certain aspects of *California*, which Plaintiffs have already

distinguished, *see, e.g.*, Dkt. 76 (Plaintiffs' Memorandum in Support of Motion for Summary Judgment), at 16-20, and is, in all events, irrelevant. This case does not seek to unwind any grant terminations, and Plaintiffs seek no "sums" owing from terminated agreements. *APHA*, 2025 WL 2415669 at *2 (Barrett, J., concurring). Terminations have come up in this case only insofar as the Rate Cap Policy contemplates effectuating its across-the-board 15% rate cap by using the threat of termination to retroactively impose this cap on existing grants. That aspect of the Rate Cap Policy does not change what matters: Plaintiffs are challenging a policy and seeking its prospective vacatur, not seeking to revive already terminated grants. Indeed, the icing on the cake is that in *APHA* itself, the guidance whose vacatur the Supreme Court declined to stay provided for the termination of grants that did not comply with the funding criteria it set forth. *See APHA I*, 2025 WL 1822487, at *6-11.[2]

## CONCLUSION

The Supreme Court's decision in *APHA* and accompanying reasoning confirms that Plaintiffs' challenge to DOD's Rate Cap Policy is reviewable in this Court.

---

[2] Although Justice Barrett reserved the question of whether the guidance in *APHA* constituted final agency action, *APHA*, 2025 WL 2415669, at *3 (Barrett, J., concurring), that reservation is no help to the government here. The government has conceded that the Michael Memo is final agency action. Dkt. 64 (Tr. of July 2, 2025 Motion Hearing) at 32; *see Ass'n of Am. Univs. v. Dep't of Def.*, No. 25-cv-11740, 2025 WL 2022628, at *14 (D. Mass. July 18, 2025). Because finality is not jurisdictional, as the First Circuit has squarely held, that concession ends the matter. *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 33 (1st Cir. 2007); *R.I. Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 40 (1st Cir. 2002); *see Jalbert v. U.S. SEC*, 945 F.3d 587, 593 (1st Cir. 2019) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)).

Dated: August 29, 2025

Respectfully submitted,

JENNER & BLOCK LLP
By: /s/ Lindsay Harrison

Ishan K. Bhabha (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice*)
Lauren J. Hartz (*pro hac vice*)
Elizabeth Henthorne (*pro hac vice*)
Zachary C. Schauf (*pro hac vice*)
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
IBhabha@jenner.com
LHarrison@jenner.com
LHartz@jenner.com
BHenthorne@jenner.com
ZSchauf@jenner.com

*Attorneys for Association of American Universities, American Council on Education, Association of Public and Land-grant Universities, AZ Board of Regents on Behalf of Arizona State University, Brown University, California Institute of Technology, The Regents of the University of California, Cornell University, The Board of Trustees of the University of Illinois, The Johns Hopkins University, Massachusetts Institute of Technology, and University of Pittsburgh of the Commonwealth System of Higher Education*

CLEMENT & MURPHY, PLLC
By: /s/ Paul D. Clement

Paul D. Clement (*pro hac vice*)
James Y. Xi (*pro hac vice*)
Kyle R. Eiswald (*pro hac vice*)
706 Duke Street
Alexandria, VA 22314
Tel: (202) 742-8900
paul.clement@clementmurphy.com
james.xi@clementmurphy.com
kyle.eiswald@clementmurphy.com

*Attorneys for Association of American Universities, Association of Public and Land-grant Universities, and American Council on Education*

ANTHONY G. BROWN
Attorney General of Maryland

By: /s/ Michael Drezner
Michael Drezner (*pro hac vice*)
   *Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
Tel: (410) 576-6959
mdrezner@oag.state.md.us

*Attorney for University of Maryland, College Park*

6

| | |
|---|---|
| NICHOLAS W. BROWN<br>Attorney General of Washington<br><br>By: /s/ *Jessica Creighton*<br>Jessica L. Creighton (*pro hac vice*)<br>   *Assistant Attorney General*<br>Office of the Attorney General of Washington<br>University of Washington Division<br>4333 Brooklyn Avenue NE, MS 359475<br>Seattle, WA 98195<br>(206) 543-4150<br>jessica.creighton@atg.wa.gov<br><br>*Attorney for University of Washington* | PHILIP J. WEISER<br>Attorney General of Colorado<br><br>By: /s/ *Lauren Peach*<br>Lauren Peach (*pro hac vice*)<br>   *First Assistant Attorney General*<br>Michael McMaster (*pro hac vice*)<br>   *Assistant Solicitor General*<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 6th Floor<br>Denver, CO 80203<br>(720) 508-6484, (720) 508-6156<br>Lauren.Peach@coag.gov<br>Michael.McMaster@coag.gov<br><br>*Attorneys for the Board of Governors of the Colorado State University System Acting by and through Colorado State University* |

**CERTIFICATE OF SERVICE**

      Counsel for Plaintiffs certify that they have submitted the foregoing document with the clerk of court for the District of Massachusetts, using the electronic case filing system of the Court. Counsel for Plaintiffs hereby certify that they have served all parties electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

                                                /s/ *Paul D. Clement*
                                                Paul D. Clement (*pro hac vice*)
                                                Clement & Murphy, PLLC
                                                706 Duke Street
                                                Alexandria, VA 22314
                                                Tel: (202) 742-8900
                                                paul.clement@clementmurphy.com

Dated:  August 29, 2025