**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF DEFENSE, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-11740 |

**PLAINTIFF AAU'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
ATTORNEYS' FEES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT .................................................................................................................... 5

I.      AAU is entitled to attorneys' fees and costs under the EAJA. ........................................... 5

        A.      AAU meets EAJA's eligibility requirements to receive attorneys' fees and costs. ............................................................................................................ 5

        B.      AAU is a prevailing party, its petition was timely filed, and no special circumstances make an award unjust. ................................................................. 5

        C.      The government's position was not substantially justified. ..................................... 6

II.     The requested amount of attorneys' fees is reasonable. ..................................................... 11

        A.      The requested rates are reasonable. ....................................................................... 12

        B.      The number of hours is reasonable. ....................................................................... 14

CONCLUSION ................................................................................................................. 15

**TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*AAU v. DOD*,

   792 F. Supp. 3d 143 (D. Mass. 2025) .............................................................. passim

*AAU v. DOD*,

   806 F. Supp. 3d 79 (D. Mass. 2025) ................................................................ passim

*AAU v. DOE*,

   789 F. Supp. 3d 118 (D. Mass. May 15, 2025) ...................................................... 2, 7

*AAU v. NSF*,

   788 F. Supp. 3d 10 (D. Mass. 2025) ........................................................................ 8

*Atl. Fish Spotters Ass'n v. Daley*,

   205 F.3d 488 (1st Cir. 2000) ............................................................................ 5, 13

*Berishev v. Chertoff*,

   486 F. Supp. 2d 202 (D. Mass. 2007) ...................................................................... 7

*Blaney v. Saul*,

   No. 18-cv-12009, 2020 WL 6162944 (D. Mass. Oct. 21, 2020) .............................. 14

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,

   532 U.S. 598 (2001) ................................................................................................ 6

*Cano v. Saul*,

   505 F. Supp. 3d 20 (D. Mass. 2020) ...................................................................... 14

*Castaneda-Castillo v. Holder*,

   723 F.3d 48 (1st Cir. 2013) ............................................................................ 4, 5, 13

*Clement v. Saul*,

   No. 18-cv-10550, 2020 WL 13558730 (D. Mass. Mar. 26, 2020) .......................... 12

*Comm'r, INS v. Jean*,

   496 U.S. 154 (1990)...................................................................................................... 4

*Conserva v. Kijakazi*,

   No. 22-cv-10205, 2023 WL 8126660 (D. Mass. June 23, 2023)..................................... 12, 14

*De Allende v. Baker*,

   891 F.2d 7 (1st Cir.1989)............................................................................................... 8

*Enos v. Saul*,

   No. 19-cv-10023, 2020 WL 6082127 (D. Mass. Oct. 15, 2020) ............................................ 14

*Kiareldeen v. Ashcroft*,

   273 F.3d 542 (3d Cir. 2001)........................................................................................... 6

*Massachusetts v. NIH*,

   164 F.4th 1 (1st Cir. 2026)............................................................................................ 11

*Massachusetts v. NIH*,

   770 F. Supp. 3d 277 (D. Mass. 2025) ............................................................................ 2, 7

*McDonald v. Bowen*,

   693 F. Supp. 1298 (D. Mass. 1988) ............................................................................... 6, 12

*McDonald v. Sec'y of Health & Hum. Servs.*,

   884 F.2d 1468 (1st Cir. 1989)........................................................................................ 6

*Penobscot Air Servs., Ltd. v. FAA*,

   164 F.3d 713 (1st Cir. 1999).......................................................................................... 10

*Pierce v. Underwood*,

   487 U.S. 552 (1988)...................................................................................................... 7, 12

*Roe v. Mayorkas*,

   No. 22-CV-10808, 2024 WL 5198705 (D. Mass. Oct. 2, 2024) ............................................ 8

iii

*Schock v. United States*,

    254 F.3d 1 (1st Cir. 2001)............................................................................................ 6, 7, 8

*Smyth v. Kijakazi*,

    No. CV 20-12275, 2021 WL 5771634 (D. Mass. Dec. 6, 2021) ............................................ 14

*Tang v. Chertoff*,

    689 F. Supp. 2d 206 (D. Mass. 2010) ................................................................................. 6, 13

*Tex. Food Indus. Ass'n v. U.S. Dep't of Agric.*,

    81 F.3d 578 (5th Cir. 1996) .................................................................................................... 5

*Wash. Dep't of Wildlife v. Stubblefield*,

    739 F. Supp. 1428 (W.D. Wash. 1989)..................................................................................... 6

**Statutes**

2 C.F.R. § 200.414(c)(1).............................................................................................................. 9

2 C.F.R. § 200.414(f).................................................................................................................. 10

10 U.S.C. § 4001(b)(1) ................................................................................................................ 9

28 U.S.C. § 2412........................................................................................................................... 1

28 U.S.C. § 2412(a)(1)................................................................................................................ 16

28 U.S.C. § 2412(d)(1)(A)......................................................................................................... 4, 5

28 U.S.C. § 2412(d)(1)(B) ............................................................................................................ 6

28 U.S.C. § 2412(d)(2)(A)........................................................................................................ 5, 12

28 U.S.C. § 2412(d)(2)(A)(ii) ..................................................................................................... 12

28 U.S.C. § 2412(d)(2)(B) ............................................................................................................ 5

28 U.S.C. § 2412(d)(2)(G)............................................................................................................ 6

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348 (2018)................. 11

National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, 139 Stat
    718 (2025) ................................................................................................................................ 11

**Other Authorities**

DOE, *Policy Flash 2025-22: Adjusting Department of Energy Grant Policy for Institutions of Higher Education (IHE)* (Apr. 11, 2025), https://www.energy.gov/management/pf-2025-22-pf-2025-22-adjusting-department-energy-grant-policy-institutions-higher ............................................................................................................ 2

Emil Michael, Under Secretary of Defense, *Implementation of a 15% Indirect Cost Cap on Assistance Awards to Institutions of Higher Education* (June 12, 2025), https://www.cogr.edu/sites/default/files/DoD%20Implementation%20of%20SECDEF%20Indirect%20Cost%20Cap%20Memo%20-%202025-06-12.pdf ................................. 2

Final Judgment, *AAU v. DOE*, 1:25-cv-10912 (D. Mass. June 30, 2025) ..................................... 8

Judgment, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 30, 2025).................................................... 4, 6

Mandate, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 30, 2025) ..................................................... 4, 6

Mot. Dismiss Appeal, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 26, 2025) .................................. 4

NIH, NOT-OD-25-068, *Supplemental Guidance to the 2024 NIH Grants Policy Statement: Indirect Cost Rates* (Feb. 7, 2025), https://grants.nih.gov/grants/guide/notice-files/NOT-OD-25-068.html ...................................................................... 2

Notice, *AAU v. NSF*, No. 1:25-cv-11231 (D. Mass. May. 16, 2025) ............................................ 2

NSF, NSF 25-034, *Policy Notice: Implementation of Standard 15% Indirect Cost Rate* (May 2, 2025), https://www.nsf.gov/policies/document/indirect-cost-rate ............................. 2

Off. of Mgmt. & Budget, *A Budget for a Better America: Major Savings and Reforms* 43 (2019), https://www.govinfo.gov/content/pkg/BUDGET-2020-MSV/pdf/BUDGET-2020-MSV.pdf................................................................................................. 11

U.S. Bureau of Labor Statistics, Databases, Tables & Calculators by Subject, https://data.bls.gov/pdq/SurveyOutputServlet?data_tool=dropmap&series_id=CUURS11ASA0,CUUSS11ASA0 (last visited Oct. 28, 2025) ..................................................... 12

**INTRODUCTION**

Plaintiff Association of American Universities ("AAU") hereby moves for an award of attorneys' fees and costs in the amount of $529,937.65, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

Last spring, the Department of Defense ("DOD") issued a policy purporting to cap at 15% the rates it would reimburse for so-called "indirect costs" associated with its awards to institutions of higher education ("IHEs").  This 15% rate cap was not unique to DOD—when the DOD policy was formalized on June 12, 2025, courts in this District had vacated or enjoined materially identical policies issued by two other federal agencies within the prior two months.  And a third agency, the National Science Foundation ("NSF"), had voluntarily stayed its own rate cap policy due to litigation over its validity.  Courts in this District have since vacated all four rate cap policies, including DOD's, and the government has voluntarily dismissed its appeals in this case and two others.  This case is the second of the four suits to reach an unappealable end.  AAU now seeks to recoup some of the cost of challenging a policy that Defendants knew or should have known was unlawful from its inception.

**FACTUAL BACKGROUND**

This litigation involved a challenge under the Administrative Procedure Act ("APA") to DOD's Rate Cap Policy.  The Policy imposed a categorical 15% cap on indirect cost rates for all new assistance awards to IHEs and required DOD to "apply the 15% cap" to existing awards, either through renegotiation or termination and reissuance of such awards.  *See* Dkt. 1-1 (the "Hegseth Memo"); Dkt. 1-2 (the "Michael Memo," and together with the Hegseth Memo, the "Rate Cap Policy").  DOD's Rate Cap Policy was materially identical to policies issued earlier in 2025 by NIH, DOE, and NSF, each of which also set an across-the-board indirect cost rate of not

more than 15% for all university grants.[1]  At the time Defendants issued the DOD policy, courts in this District had already vacated and enjoined the NIH policy—including entering a final judgment to that effect on the government's own motion—and preliminarily enjoined DOE from enforcing its policy.  *See Massachusetts v. NIH*, 770 F. Supp. 3d 277, 327, *judgment entered*, No. 1:25-CV-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025); *AAU v. DOE*, 789 F. Supp. 3d 118, 153 (D. Mass. 2025).  NSF had also voluntarily stayed its own policy in response to a legal challenge brought by AAU and many of the Plaintiffs in this suit.  *See* Notice, *AAU v. NSF*, No. 1:25-cv-11231 (D. Mass. May. 16, 2025), Dkt. 50.

DOD first announced its intent to impose a Rate Cap Policy in the Hegseth Memo on May 14, 2025, and formally implemented it via the Michael Memo on Thursday, June 12, 2025 (though IHEs only learned about the Michael Memo on Friday, June 13, 2025, because DOD did not publicly post the memo).  *See* Compl. ¶ 67.  The Hegseth Memo ordered DOD's Under Secretary of Defense for Research and Engineering to take actions to develop and implement the rate cap, and on its face did not call for the immediate implementation of the rate cap.  *See* Hegseth Memo at 1–2.  But even before the Under Secretary issued the formal policy, DOD personnel began notifying IHEs with pending grant proposals that all new submissions would need to comply with the terms of the Hegseth Memo (*i.e.*, accept a 15% indirect cost rate).  Compl. ¶¶ 65-66.  Plaintiffs' counsel quickly intervened with Defendants' counsel to stop DOD's premature implementation efforts.  *Id.* ¶ 66.

---

[1] *See* NIH, NOT-OD-25-068, *Supplemental Guidance to the 2024 NIH Grants Policy Statement: Indirect Cost Rates* (Feb. 7, 2025), https://grants.nih.gov/grants/guide/notice-files/NOT-OD-25-068.html; DOE, *Policy Flash 2025-22: Adjusting Department of Energy Grant Policy for Institutions of Higher Education (IHE)* (Apr. 11, 2025), https://www.energy.gov/management/pf-2025-22-pf-2025-22-adjusting-department-energy-grant-policy-institutions-higher; NSF, NSF 25-034, *Policy Notice: Implementation of Standard 15% Indirect Cost Rate* (May 2, 2025), https://www.nsf.gov/policies/document/indirect-cost-rate.

When DOD issued the Michael Memo, Plaintiffs were forced to act expeditiously to prevent irreparable harm to Plaintiffs and their members because the memo called for immediate implementation of the Rate Cap Policy for new grants. Concerned that DOD would start requiring compliance with the new Policy immediately—a reasonable concern in light of the actions of DOD personnel on the heels of the Hegseth memo—Plaintiffs filed their complaint on June 16, three days after they learned of the Michael Memo (*i.e.*, the following business day). Plaintiffs simultaneously moved for a TRO and filed 25 declarations outlining the harms that would come from allowing the Rate Cap Policy to go into effect. This Court quickly granted the TRO on June 17, 2025. Order, Doc. No. 48.

This Court then granted more enduring preliminary relief. After further briefing and a hearing, the Court treated Plaintiffs' motion for a TRO as a motion for a preliminary injunction, and on July 18, 2025, granted such an injunction. *AAU v. DOD*, 792 F. Supp. 3d 143, 150 (D. Mass. 2025) (hereinafter, "*DOD I*"). The Court found the Rate Cap Policy likely: was not in accordance with the governing regulations, *id.* at 165–68; violated relevant statutes, *id.* at 168–69; and was arbitrary and capricious on several grounds, *id.* at 169–76. The Court also found that Plaintiffs had credibly demonstrated irreparable, imminent harm from the Policy and that the balance of equities and public interest weighed in favor of Plaintiffs. *Id.* at 176–82.

Following further briefing, the court granted permanent relief, vacating the Rate Cap Policy in its entirety. In a thorough, well-reasoned decision, this Court granted summary judgment to Plaintiffs across the board, reiterating and building out its findings from the preliminary injunction order, and denied Defendants' cross-motion for summary judgment as moot. The Court rejected Defendants' threshold arguments regarding jurisdiction. *AAU v. DOD*, 806 F. Supp. 3d 79, 90–92 (D. Mass. 2025) (hereinafter, "*DOD II*"). As at the preliminary injunction stage, and as the courts

3

in *NIH*, *DOE*, and *NSF* similarly did before it, on the merits, this Court held that DOD's Rate Cap Policy was: not in accordance with the governing regulations, *id.* at 97–102; violated relevant statutes, *id.* at 102–07; and was arbitrary and capricious on various grounds, *id.* at 107–120. The Court vacated the Policy and declared it unlawful, which provided full relief to AAU and its members, and, indeed, to all IHEs that would have been subject to the Policy. *Id.* at 120–24.

Defendants appealed. Dkt. 93. Before briefing in the First Circuit could begin, Defendants changed course and filed an unopposed motion to dismiss their appeal. Unopposed Mot. to Voluntarily Dismiss Appeal, *AAU v. DOD*, No. 25-2184 (1st Cir. Feb. 10, 2026). The First Circuit granted the motion and issued the mandate terminating this case on February 18, 2026. Judgment, *AAU v. DOD*, No. 25-2184 (1st Cir. Feb. 18, 2026); Mandate, *AAU v. DOD*, No. 25-2184 (1st Cir. Feb. 18, 2026).

AAU now files this timely motion for attorneys' fees and costs under the EAJA.

## LEGAL STANDARD

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). To receive attorneys' fees and costs under the EAJA, the First Circuit requires an eligible plaintiff to show that: (1) it "is the prevailing party in the civil action"; (2) its "petition was timely filed"; (3) "the government's position was not substantially justified"; and (4) "no special circumstances make an award against the government unjust." *Castaneda-Castillo v. Holder*, 723 F.3d 48, 57 (1st Cir. 2013) (citing *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990)).

4

**ARGUMENT**

**I.     AAU is entitled to attorneys' fees and costs under the EAJA.**

AAU is entitled to an award of attorneys' fees and costs under the EAJA because it is the entity responsible for paying the legal fees and costs in this matter and this request meets the statutory requirements: AAU is an eligible, prevailing party; its petition is timely; Defendants' position was not substantially justified; and no special circumstances make an award unjust.  *See* 28 U.S.C. § 2412(d)(1)(A), (d)(2)(B).  Moreover, the fees requested are reasonable in light of the expertise of AAU's attorneys, the complexity of the legal issues, the stakes of the litigation, and the complete relief obtained.  *See id.* § 2412(d)(2)(A).

**A.     AAU meets EAJA's eligibility requirements.**

A prevailing 501(c)(3) organization is eligible to recoup fees and costs under the EAJA "regardless of the net worth of such organization," as long as it does not have "more than 500 employees at the time the civil action was filed."[2]  28 U.S.C. § 2412(d)(2)(B).  As a 501(c)(3) organization with fewer than 500 employees, *see* Declaration of Barbara Snyder, Ex. 1 ¶ 2, and as the entity responsible for the attorneys' fees in this matter, *id.* ¶ 3, AAU is permitted to recover fees by the clear text of the EAJA.

**B.     AAU is a prevailing party, its petition was timely filed, and no special circumstances make an award unjust.**

AAU is a prevailing party under the EAJA.  A "prevailing party" is one that has been "awarded some relief by the court." *Castaneda-Castillo*, 723 F.3d at 57 (quoting *Buckhannon Bd.*

---

[2] The EAJA-eligibility of an organization's *members* is irrelevant for the eligibility analysis.  *See Tex. Food Indus. Ass'n v. U.S. Dep't of Agric.*, 81 F.3d 578, 582 (5th Cir. 1996) (holding associations are eligible for EAJA fees "on the basis of each association's independent qualifications—not the qualifications of its constituent members"); *see also Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 489, 493 (1st Cir. 2000) (permitting award of attorneys' fees for trade association).

*& Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001)). AAU received relief through vacatur of the DOD Rate Cap Policy and a declaration of its unlawfulness from this Court. *DOD II*, 806 F. Supp. 3d 79 at 120–24.

This petition is timely. The EAJA requires that a petition for attorneys' fees and costs be filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). A "final judgment" is a judgment that is final and unappealable. *Id.* § 2412(d)(2)(G). The First Circuit entered an unappealable, final judgment in this case on February 18, 2026. Judgment, *AAU v. DOD*, No. 25-2184 (1st Cir. Feb. 18, 2026); Mandate, *AAU v. DOD*, No. 25-2184 (1st Cir. Feb. 18, 2026). This motion was timely filed within thirty days of that final judgment.

There are no special circumstances that would justify the denial of attorneys' fees and costs, and Defendants bear the burden of proof should they argue otherwise.[3] *See McDonald v. Bowen*, 693 F. Supp. 1298, 1302 (D. Mass. 1988), *aff'd in part, remanded in part sub nom. McDonald v. Sec'y of Health & Hum. Servs.*, 884 F.2d 1468 (1st Cir. 1989).

## C.    The government's position was not substantially justified.

Once an EAJA petitioner alleges that the government's position was not substantially justified, the government bears "the burden of establishing *both* that 'the agency action giving rise to the litigation was substantially justified' *and* that 'its litigation positions were substantially justified.'" *Tang v. Chertoff*, 689 F. Supp. 2d 206, 214 (D. Mass. 2010) (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 545 (3d Cir. 2001)); *Schock v. United States*, 254 F.3d 1, 5 (1st Cir. 2001) (directing "courts . . . to examine both the prelitigation actions or inaction of the agency on which

---

[3] To the extent the government may argue that the presence of other Plaintiffs who may be ineligible to receive EAJA fees is a special circumstance, that is unsupported by case law and wrongheaded in any event. *See Wash. Dep't of Wildlife v. Stubblefield*, 739 F. Supp. 1428, 1432 (W.D. Wash. 1989) (finding "no special circumstances make an award of fees to Audubon unjust, despite the participation of Wildlife (an ineligible co-plaintiff) with Audubon in the lawsuit").

6

the litigation is based and the litigation position of the United States" when determining whether a position is substantially justified). The government is required to demonstrate, by a preponderance of the evidence, that its overall position had "a reasonable basis both in law and in fact." *Berishev v. Chertoff*, 486 F. Supp. 2d 202, 206 (D. Mass. 2007) (quoting *Pierce v. Underwood*, 487 U.S. 552, 563 (1988)); *see also Pierce*, 487 U.S. at 566 n.2 ("[A] position can be . . . substantially . . . justified if a reasonable person could think it correct."). Also relevant to the analysis is whether "a string of court decisions" have come out for or against the government on a particular issue. *See Schock*, 254 F.3d at 6 (citing *Pierce*, 487 U.S. at 568).

Neither DOD's issuance of the Rate Cap Policy nor its positions in litigation were substantially justified. *First*, both the policy and DOD's litigation positions were facially unreasonable in light of the court decisions regarding materially similar policies. DOD issued and defended its Policy after courts in this District had already vacated or enjoined nearly identical policies issued by two other agencies. *See NIH*, 770 F. Supp. 3d at 327, *judgment entered*, No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025); *DOE*, 789 F. Supp. 3d at 153. And when DOD issued the Michael Memo, NSF had agreed to voluntarily stay its policy due to a legal challenge. *See* Notice, *AAU v. NSF*, No. 1:25-cv-11231 (D. Mass. May 16, 2025), Dkt. 50. As this Court noted in its preliminary injunction opinion, "[t]he Government . . . purported to announce a policy that has consistently been deemed unlawful, without acknowledgment of its apparent illegality and without any attempt to structure the policy in a manner that fulfills the established requirements of law." *DOD I*, 792 F. Supp. 3d at 150. This is far from substantially justified.

And rather than take prior court decisions and briefing into account in their defense of the Policy, Defendants made arguments in this case almost identical to those multiple courts had

already rejected in prior cases. *See, e.g.*, *DOD I*, 792 F. Supp. 3d at 173 ("Defendants make no effort to distinguish a recent decision from this District [in *NIH*] that rejected this same comparison . . . ."); *id.* at 178 ("This argument has been rejected by other courts . . ." in the *DOE* and *NIH* cases). The government has forced AAU to litigate four lawsuits against four materially identical Rate Cap Policies, and AAU has won permanent relief in all four, all before Defendants voluntarily dismissed their appeal in this case. *See NIH*, No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025); Final Judgment, *AAU v. DOE*, 1:25-cv-10912 (D. Mass. June 30, 2025), Dkt. 71; *AAU v. NSF*, 788 F. Supp. 3d 106, 138–44 (D. Mass. 2025); *DOD II*, 806 F. Supp. 3d at 120–24.

While the "mere fact that the government does not prevail is not dispositive on the issue of substantial justification," *Schock*, 254 F.3d at 5 (citing *De Allende v. Baker*, 891 F.2d 7, 13 (1st Cir. 1989)), that is not the situation here. The government has lost, handily, at every stage of litigation in every suit brought against its Rate Cap Policies. This "string of losses" in strikingly similar cases clearly shows that Defendants' Policy and litigation positions are not and never have been substantially justified.

*Second*, the lack of justification for Defendants' attempt to upend a decades-old research funding regime is underscored by the scant administrative record. The administrative record "must consist of all documents and materials directly or indirectly considered by [the] agency decision-makers." *Roe v. Mayorkas*, No. 22-cv-10808, 2024 WL 5198705, at *7 (D. Mass. Oct. 2, 2024) (internal quotation marks omitted) (alteration in original). The administrative record here "consist[ed] of six documents, comprising only fifteen pages: (i) NIH's version of the rate cap policy; (ii) DOE's version of the rate cap policy and accompanying press release; (iii) the Hegseth Memo; (iv) the Michael Memo; (v) a seven-line chart with calculations purporting to show how much money DOD will save; and (vi) a list of nine of the 'Largest US Private Research Funding

8

Providers' and their 'Max IDC Rate[s].'" *DOD II*, 806 F. Supp. 3d at 108.  As this Court found, the fact that Defendants apparently considered only the text of the prior policies and not the court decisions finding those policies unlawful, along with two documents of "startlingly low evidentiary value," shows there was "a material shortcoming in Defendants' evaluation of the Rate Cap Policy."  *Id.* at 108–09; *see also id.* at 113 ("[T]he shoddiness of the work product Defendants claim to have relied upon makes unavoidable the conclusion that no real consideration was ever given in the first place.").  In other words, the "paucity of the administrative record . . . underscores the obviousness that this Policy was instituted without any real consideration of its effect."  *Id.* at 107.

*Third*, had Defendants even considered whether the Rate Cap Policy was substantially justified, they should have realized—as this Court found repeatedly—that the Policy was unlawful. This Court, at both the preliminary injunction and summary judgment stages, held that DOD's Policy was contrary to law and arbitrary and capricious in multiple, independent ways, any one of which could have supported a decision to vacate the Policy in its entirety.  In particular, this Court held that Defendants violated several regulations, including:

- 2 C.F.R. § 200.414(c)(1), which "establishes a baseline that '[n]egotiated indirect cost rates must be accepted by all Federal agencies,'" *id.* at 97 (quoting 2 C.F.R. § 200.414(c)(1)); *DOD I*, 792 F. Supp. 3d at 165–68;

- 2 C.F.R. § 200.414(f), which allows for a 15% *de minimis* rate in certain circumstances not present here, *DOD II*, 806 F. Supp. 3d at 97–98; *DOD I*, 792 F. Supp. 3d at 168;

- and other regulations, such as 2 C.F.R. pt. 200, App. III(C)(7)(a), that apply to indirect cost rates for existing grants, *DOD II*, 806 F. Supp. 3d at 98–102.

The Court also found that DOD's policy was contrary to 10 U.S.C. § 4001(b)(1) based on "the plain text of the statute" and "the statute's history and the broader history of federal grants." *DOD II*, 806 F. Supp. 3d at 102–03; *DOD I*, 792 F. Supp. 3d at 168–69.

9

But there is more still.  This Court found the Policy was arbitrary and capricious, observing: "The reality is that, in issuing the Rate Cap Policy, Defendants exercised little judgment at all, at least insofar as that word contemplates examin[ing] the pertinent evidence, consider[ing] the relevant factors, and articulat[ing] a satisfactory explanation."  *DOD II*, 806 F. Supp. 3d at 107 (internal quotation marks omitted) (alteration in original) (quoting *Penobscot Air Servs., Ltd. v. FAA*, 164 F.3d 713, 719 (1st Cir. 1999)).  At a more granular level, this Court found Defendants' actions were arbitrary and capricious because:

- DOD failed to consider decisions striking down materially similar rate cap policies issued by other agencies, *id.* at 108–09;

- The administrative record indicated that "no real consideration was ever given in the first place" to the parameters and effects of the Policy, *id.* at 107, 109–13;

- DOD failed to explain what "cost savings" meant or how it would be achieved, *DOD II*, 806 F. Supp. 3d at 114–16; *DOD I*, 792 F. Supp. 3d at 172–73;

- DOD failed to provide adequate reasoning for why it relied on the indirect cost rate paid by private foundations, reasons why the federal and private foundation rates may differ, and how reducing the indirect cost rate from the federal government may harm universities, *DOD II*, 806 F. Supp. 3d at 116–17; *DOD I*, 792 F. Supp. 3d at 173–74;

- DOD failed to explain why it singled out IHEs for a rate cap, *DOD II*, 806 F. Supp. 3d at 117–18; *DOD I*, 792 F. Supp. 3d at 171–72; and

- DOD failed to address IHEs' reliance interests, *DOD II*, 806 F. Supp. 3d at 118–20; *DOD I*, 792 F. Supp. 3d at 174–75.

*Finally*, if all the above were not enough, the unlawfulness of the DOD Rate Cap Policy should have been clear from Congress's response to the first Trump Administration's attempt to limit indirect costs.  In 2017, when the Administration proposed capping indirect costs on NIH grants at 10%, Congress passed an appropriations rider prohibiting any cap and requiring NIH to follow the institution-specific approach to setting indirect cost rates set forth in the governing regulations—which are materially identical to the regulations that apply to DOD.  *See*

10

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 226, 132 Stat. 348, 740.  In other words, as the First Circuit held in the *NIH* case, not only did Congress act swiftly to correct the Executive when that branch proposed a radical change to the governing framework, it also understood that the regulations prohibit rate caps.  *See Massachusetts v. NIH*, 164 F.4th 1, 16 (1st Cir. 2026) ("Congress went to great lengths [by passing the rider] to ensure that NIH could not displace negotiated indirect cost reimbursement rates with a uniform rate.").  While the 2017 rider applies to NIH, it shows that Plaintiffs' interpretation of the governing regulations is both longstanding and correct (and Defendants' interpretation is both recent and incorrect).[4]  The first Trump Administration acknowledged as much: In 2019, the Administration agreed that, through the rider, Congress had prohibited NIH "by law from reducing grantee administrative costs and shifting these resources to support direct research."  Off. of Mgmt. & Budget, *A Budget for a Better America: Major Savings and Reforms* 43 (2019), https://www.govinfo.gov/content/pkg/BUDGET-2020-MSV/pdf/BUDGET-2020-MSV.pdf.

In sum, the string of losses from courts in this District in cases challenging materially similar policies, the myriad legal defects and factual shortcomings identified by this Court, and Congress's rejection of a prior rate cap by directing the Executive to follow the regulations demonstrate that Defendants' issuance and defense of the Policy were without legal or factual merit and were not substantially justified.

## II.    The requested amount of attorneys' fees is reasonable.

AAU requests a total of $529,937.65 in attorneys' fees, as set forth below.  The EAJA sets a statutory rate of $125 per hour for attorneys and allows for a cost-of-living adjustment.  *See* 28

---

[4] Congress recently passed a similar rider to prevent any future efforts by DOD to unilaterally enact an indirect cost rate cap, *see* National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, § 230, 139 Stat 718, 788 (2025), which further underscores how unreasonable the DOD Rate Cap Policy was.

U.S.C. § 2412(d)(2)(A)(ii).  It also permits courts to adjust the hourly rate upward due to a "special factor."  28 U.S.C. § 2412(d)(2)(A).  The Supreme Court has interpreted "special factor" to mean the attorneys in question have "distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation."  *See Pierce*, 487 U.S. at 572; *see also, e.g.*, *McDonald*, 693 F. Supp. at 1306 (granting a special factor enhancement where attorneys were "specialists" in an area of law, "educate[d] both the court and the other attorneys" about their area of expertise, and there was a "relative shortage of attorneys possessing" such skills).

### A.    The requested rates are reasonable.

An upward adjustment to the statutory rate is warranted here, both to account for the cost of living and given the distinctive knowledge and specialized skill of AAU's attorneys, earned through their work on prior cases challenging rate cap policies.  Including both adjustments together, AAU requests an attorney rate of $500 per hour for attorneys who have developed "distinctive knowledge [and] specialized skill" in litigating against rate cap policies.  AAU requests $266.35 per hour worked in 2025 and $267.46 per hour worked in 2026 for all other attorneys that worked on this litigation.

First, the District of Massachusetts has granted a cost-of-living adjustment in recent cases, *see Conserva v. Kijakazi*, No. 22-cv-10205, 2023 WL 8126660, at *2 (D. Mass. June 23, 2023); *Clement v. Saul*, No. 18-cv-10550, 2020 WL 13558730, at *3 (D. Mass. Mar. 26, 2020), and applying the same formula approved in those cases would bring the updated EAJA hourly rate to $266.35 per hour worked in 2025 and $267.46 per hour worked in 2026.[5]

---

[5] This rate was calculated by finding the annual CPI-U for the Boston area for 2025 (346.889) and the only available monthly CPI-U for Boston in 2026 (January, 348.343), multiplying each value separately by the statutory rate ($125), and dividing each value separately by the CPI-U for the Boston area in March of 1996 (162.8).  *See* U.S. Bureau of Labor Statistics, Databases, Tables &

Second, in addition to expertise and experience in civil litigation and administrative law, certain attorneys involved in this matter have litigated a total of four challenges to agency rate cap policies, including three that were fully briefed before DOD issued its policy: Lindsay Harrison, Ishan Bhabha, Betsy Henthorne, Steve Englund, Anjali Motgi, Zachary Schauf, and Adam Unikowsky, from Jenner & Block LLP; and Paul Clement and James Xi from Clement & Murphy, PLLC. Declaration of Lindsay C. Harrison, Ex. 2 ¶¶ 5, 7; Declaration of Paul D. Clement, Ex. 3 ¶¶ 5, 7. In the course of those challenges, these attorneys developed distinctive knowledge and specialized skills regarding the statutory and regulatory frameworks governing indirect costs, as well as the factual and legal bases for challenging policies limiting such costs, that no other team of attorneys has developed. Ex. 2 ¶ 6; Ex. 3 ¶ 6. This prior experience was crucial for Plaintiffs' counsel to prevent irreparable harm from DOD's chaotic, start-and-stop rollout of its Rate Cap Policy, including preventing premature implementation of the Hegseth Memo. *See* Compl. ¶ 65–66; Ex. 2 ¶ 3. And when DOD issued its formal policy in the Michael Memo, these attorneys' experience and expertise made it possible to file and litigate this challenge quickly, which was necessary given the Policy was set to take effect immediately and AAU and its members would have experienced irreparable harm if it had. *See DOD I*, 792 F. Supp. 3d at 176–80 (finding irreparable harm should the DOD Rate Cap Policy go into effect); Ex. 2 ¶¶ 4, 6; Ex. 3 ¶¶ 4, 6. Put simply, there was no time to waste. *Cf. Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 492 (1st Cir. 2000) (noting that "in most cases an otherwise competent lawyer can—albeit at the cost of some extra time—learn enough about the particular controversy to litigate in the area adequately").

---

Calculators by Subject*, https://data.bls.gov/pdq/SurveyOutputServlet?data_tool=dropmap&series _id=CUURS11ASA0,CUUSS11ASA0 (data extracted Mar. 17, 2026) (Boston area CPI-U); *Castaneda-Castillo*, 723 F.3d at 76 (explaining methodology); *Tang*, 689 F. Supp. 2d at 218–19 (same).

The prior experience and specialized skills also permitted those attorneys to bill fewer hours on this litigation than would other lawyers, even those generally familiar with and experienced in APA litigation. This special factor warrants a rate of $500 per hour for the time spent by these attorneys on this litigation, which is substantially less than the hourly rate charged to AAU for their expertise.[6] Ex. 2, ¶ 7; Ex. 3, ¶ 7; Jenner & Block Hours Billed, Ex. 4; Clement & Murphy Hours Billed, Ex. 5.

AAU's requested rate of $95 per hour for paralegals is also reasonable. Courts in this District have approved such a rate in several recent cases. *See, e.g.*, *Conserva*, 2023 WL 8126660, at *3; *Smyth v. Kijakazi*, No. CV 20-12275, 2021 WL 5771634, at *4 (D. Mass. Dec. 6, 2021); *Cano v. Saul*, 505 F. Supp. 3d 20, 30–31 (D. Mass. 2020); *Blaney v. Saul*, No. 18-cv-12009, 2020 WL 6162944, at *3, *5 (D. Mass. Oct. 21, 2020); *Enos v. Saul*, No. 19-cv-10023, 2020 WL 6082127, at *1 n.4 (D. Mass. Oct. 15, 2020).

**B.    The number of hours is reasonable.**

The number of hours billed by the attorneys and paralegals in this case is reasonable in light of the complexity of the issues, the existential stakes for AAU and its members, and the complete relief obtained. While AAU's attorneys have distinctive knowledge and specialized skill and experience litigating challenges to agency actions limiting indirect cost rates, this challenge still required in-depth research and extensive briefing on a complicated interlocking statutory and regulatory scheme. The scale and implementation timeline of the Rate Cap Policy—which purported to take effect immediately for new grants—required a large team of attorneys to quickly prepare and file a complaint and TRO; compile evidence presented in 25 separate, comprehensive declarations; and prepare and file multiple briefs on an abbreviated timeline, all in order to protect

---

[6] In the alternative, Plaintiff proposes that fees for all attorneys be granted at a rate of $266.35 per hour worked in 2025 and $267.46 per hour worked in 2026, the cost-of-living adjusted rates.

hundreds of millions of dollars in funding for AAU's members. *See* Dkt. 39 at 19, 38; Ex. 2 ¶¶ 4, 6; Ex. 3 ¶¶ 4, 6. In addition to preparing briefs and evidentiary filings, time reasonably spent on this matter included negotiations with Defendants over timing and implementation of the Policy; preparation for and presentation of oral argument at the preliminary injunction and summary judgment stages; strategy and correspondence regarding the government's appeal; and preparation of this fee and costs petition. The efficacy of the time spent was demonstrated by the full relief achieved in this case.

*    *    *

As set forth in the attached declarations and charts of time entries, AAU seeks fees for 626.90 hours of attorney time at a rate of $500 per hour (for a total of $313,450), 752.15 hours of attorney time at a rate of $266.35 per hour for hours worked in 2025 and $267.46 per hour for hours worked in 2026 (for a total of $200,337.65), and 170 hours of paralegal time at a rate of $95 per hour (for a total of $16,150).[7] *See* Summary of Hours and Fees Chart, Ex. 6; Ex. 4; Ex. 5. This request is reasonable and should be granted pursuant to the EAJA.

## CONCLUSION

For the reasons outlined above, AAU respectfully requests that this Court grant its motion and award attorneys' fees under the EAJA in the amount of $529,937.65.

---

[7] AAU reserves its right to request additional fees for as-of-yet unbilled work carried out as part of this fee proceeding.

Dated: March 20, 2026

JENNER & BLOCK LLP

By: */s/ Lindsay C. Harrison*

Lindsay C. Harrison (admitted *pro hac vice*)
Ishan K. Bhabha (admitted *pro hac vice*)
Lauren J. Hartz (admitted *pro hac vice*)
Elizabeth Henthorne (admitted *pro hac vice*)
Zachary C. Schauf (admitted *pro hac vice*)
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com
IBhabha@jenner.com
LHartz@jenner.com
BHenthorne@jenner.com
ZSchauf@jenner.com

Shoba Pillay, BBO No. 659739
353 N Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
SPillay@jenner.com

*Attorneys for Association of American Universities, American Council on Education, Association of Public and Land-grant Universities, AZ Board of Regents on Behalf of Arizona State University, Brown University, California Institute of Technology, The Regents of the University of California, Cornell University, The Board of Trustees of the University of Illinois, The Johns Hopkins University, Massachusetts Institute of Technology, and University of Pittsburgh of the Commonwealth System of Higher Education*

Respectfully submitted,

CLEMENT & MURPHY, PLLC

By: */s/ Paul D. Clement*

Paul D. Clement (admitted *pro hac vice*)
James Y. Xi (admitted *pro hac vice*)
Kyle R. Eiswald (admitted *pro hac vice*)
706 Duke Street
Alexandria, VA 22314
Tel: (202) 742-8900
paul.clement@clementmurphy.com
james.xi@clementmurphy.com
kyle.eiswald@clementmurphy.com

*Attorneys for Association of American Universities, Association of Public and Land-grant Universities, and American Council on Education*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March, 2026, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument, and all attachments.

*/s/ Lindsay C. Harrison*
Lindsay C. Harrison (admitted *pro hac vice*)
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com

17