**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-11740-BEM |
| DEPARTMENT OF DEFENSE, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION TO ASSOCIATION OF AMERICAN
UNIVERSITIES' MOTION FOR ATTORNEYS' FEES
<u>PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT</u>**

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................................ 1

LEGAL STANDARD.................................................................................................................... 3

ARGUMENT ................................................................................................................................. 3

    I.    A Fee Award is Not Warranted ....................................................................................... 3

        A.    The Government's position was substantially justified. ................................................ 3

        B.    Special circumstances make an award unjust. .............................................................. 9

    II.    AAU's Fees Should Be Reduced.................................................................................... 13

        A.    AAU has not shown it is entitled to an increased hourly fee...................................... 13

        B.    The number of hours should be reduced...................................................................... 15

CONCLUSION............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Ardestani v. I.N.S.*,
502 U.S. 129 (1991) ............................................................................................................... 3

*Aronov v. Napolitano*,
562 F.3d 84 (1st Cir. 2009) ............................................................................................... 1, 8

*Assoc. of Am. Univs. v. Dep't of Energy*,
789 F. Supp. 3d 118 (D. Mass. 2025) ............................................................................... 6, 7

*Assoc. of Am. Univs. v. Nat'l Sci. Found.*,
788 F. Supp. 3d 106 (D. Mass. 2025) ............................................................................... 6, 9

*Assoc. of Am. Univs. v. Dep't of Defense*,
806 F. Supp. 3d 79 (D. Mass. 2025) ................................................................................. 2, 6

*Atlantic Fish Spotters Ass'n v. Daley*,
205 F.3d 488 (1st Cir. 2000) ........................................................................................... 13, 14

*Bowey v. West*,
218 F.3d 1373 (Fed. Cir. 2000) ........................................................................................... 8

*Calhoun v. Acme Cleveland Corp.*,
801 F.2d 558 (1st Cir. 1986) ............................................................................................... 18

*Cano v. Saul*,
505 F. Supp. 3d 20 (D. Mass. 2020) ................................................................................... 19

*Comm'r, I.N.S. v. Jean*,
496 U.S. 154 (1990) .......................................................................................................... 3, 4

*E.E.O.C. v. AutoZone, Inc.*,
934 F. Supp. 2d 342 (D. Mass. 2013) ............................................................................. 18, 19

*Ewing v. Rodgers*,
826 F.2d 967 (10th Cir. 1987) ............................................................................................. 10

*Gay Officers Action League v. Puerto Rico*,
247 F.3d 288 (1st Cir. 2001) ............................................................................................... 20

*Griffith v. Comm'r of Soc. Sec.*,
987 F.3d 556 (6th Cir. 2021) ............................................................................................... 8

*Lackey v. Stinnie*,
604 U.S. 192 (2025)................................................................................................. 9

*Lewis v. Sec'y of Health & Human Servs.*,
370 F. Supp. 3d 267 (D. Mass. 2019) ................................................................... 14

*Lipsett v. Blanco*,
975 F.2d 934 (1st Cir. 1992)................................................................................... 18

*Louisiana ex rel. Guste v. Lee*,
853 F.2d 1219 (5th Cir. 1988) ......................................................................... 10, 11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................................. 7

*Mason v. Me. Dep't of Corr.*,
387 F. Supp. 2d 57 (D. Me. 2005) ......................................................................... 15

*Massachusetts v. Nat'l Insts. of Health*,
164 F.4th 1 (1st Cir., 2026)................................................................................... 5, 9

*Massachusetts v. Nat'l Insts. of Health*,
770 F. Supp. 3d 277 (D. Mass. 2025) ............................................................. 6, 7, 9

*Michel v. Mayorkas*,
68 F.4th 74 (1st Cir. 2023)....................................................................................... 4

*Miller v. Holzmann*,
575 F. Supp. 2d 2 (D.D.C. 2008) ........................................................................... 20

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*,
972 F.2d 669 (6th Cir. 1992) ................................................................................. 11

*New Hampshire Hospital Association v. Azar*,
Civ. No. 15-cv-460-LM, 2019 WL 1406631 (D.N.H. Mar. 28, 2019)................... 18

*New Jersey v. EPA*,
703 F.3d 110 (D.C. Cir. 2012)............................................................................... 19

*Omni Packaging, Inc. v. U.S. I.N.S.*,
940 F. Supp. 42 (D.P.R. 1996)................................................................................. 8

*Pierce v. Underwood*,
487 U.S. 552 (1988)..................................................................................... 4, 13, 15

*PQ Labs, Inc. v. Qi*,
No. 12-0450, 2015 WL 224970 (N.D. Cal. Jan. 16, 2015)........................................................ 10

*Roanoke River Basin Ass'n v. Hudson*,
991 F.2d 132 (4th Cir. 1993) ........................................................................................................ 8

*Role Models Am., Inc. v. Brownlee*,
353 F.3d 962 (D.C. Cir. 2004)................................................................................................... 19

*Ryan v. Astrue*,
No. 08-cv-17, 2009 WL 9292938 (D.N.H. Apr. 3, 2009) .......................................................... 9

*Saysana v. Gillen*,
614 F.3d 1 (1st Cir. 2010)................................................................................................... passim

*Scarborough v. Principi*,
541 U.S. 401 (2004)...................................................................................................................... 1

*Schock v. United States*,
254 F.3d 1 (1st Cir. 2001)............................................................................................................. 3

*Sierra Club v. Sec. of Army*,
820 F.2d 513 (1st Cir. 1987)....................................................................................................... 10

*Sierra Club v. U.S. Army Corps of Engineers*,
776 F.2d 383 (2d Cir. 1985).................................................................................................. 11, 12

*Sinclair v. Berryhill*,
284 F. Supp. 3d 111 (D. Mass. 2018) ........................................................................................ 15

*Sloan v. Pugh*,
351 F.3d 1319 (10th Cir. 2003) .................................................................................................. 10

*Stanback v. Shinseki*,
No. 05-1392, 2011 WL 2110213 (Vet. App. May 27, 2011) ............................................... 16, 17

*Torres-Rivera v. Espada-Cruz*,
Civ. No. 99-1272, 2007 WL 906176 ,at (D.P.R. Mar. 22, 2007) ............................................. 18

*Torres-Rivera v. O'Neill-Cancel*,
524 F.3d 331 (1st Cir. 2008).................................................................................................. 17

*United States v. 1,378.65 Acres of Land*,
794 F.2d 1313 (8th Cir. 1986) ................................................................................................. 10

*WB Music Corp. v. Royce Int'l Broad. Corp.*,
   No. EDCV 16-600, 2020 WL 8174627 (C.D. Cal. Nov. 20, 2020)........................................... 18

*Wild Fish Conservancy v. Thom*,
   No. C20-417, 2025 WL 3259740 (W.D. Wash. May 19, 2025)................................................ 20

*Williams v. Barnhart*,
   206 Fed. App'x 378 (5th Cir. 2006) ....................................................................................... 13

**Statutes**

10 U.S.C. § 4001 ..................................................................................................................... 5

28 U.S.C. § 2412 ........................................................................................................ 1, 3, 9, 13

41 U.S.C. § 4708 ..................................................................................................................... 9

Plaintiff Association of American Universities' ("AAU") motion for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, should be denied. Congress enacted the EAJA "to ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." *Aronov v. Napolitano*, 562 F.3d 84, 88 (1st Cir. 2009) (en banc) (quoting *Scarborough v. Principi*, 541 U.S. 401, 407 (2004)). AAU, essentially a trade association with member institutions of higher education ("IHEs") that face no financial barriers to contesting government action, is not entitled to attorney fees under the EAJA because the position of the United States was substantially justified and other circumstances make an award unjust. In the event the Court decides to award fees, the fee award should be reduced to $137,926.18 to account for disparities between the amounts billed here and the amounts billed in a similar case, as well as various concerning billing records practices.

**BACKGROUND**

On May 14, 2025, discharging his duty as "the steward of the most critical budget in the Federal Government," the Secretary of Defense instructed the Department of Defense ("DoD") to develop and implement a forward-looking policy to reduce research spending on indirect costs with the objective of "repurpos[ing] [$900 million annually] toward applied innovation, operation capability, and strategic deterrence." *See* Doc. No. 1-1. As a result, on June 12, 2025, DoD established a policy (the "Policy") providing a 15 percent indirect cost rate limit for all new assistance awards to IHEs and requiring that outstanding notices of funding opportunities and existing assistance awards be renegotiated to reflect this change. Doc. No. 1-2. The Policy intended to bring DoD's indirect cost reimbursement in line with "the indirect cost rates allowed by several non-profit foundations that provide financial assistance to IHEs," which "would lead

1

to cost savings." *Id.* at 2.  Such savings could then be repurposed as discussed in the May 14, 2025 memorandum.  *See* Doc. 1-1.

On June 16, 2025, AAU, two other organizations,[1] and twelve IHEs (collectively "Plaintiffs") jointly filed this litigation to challenge the DoD Policy.  That same day, Plaintiffs moved for a temporary restraining order ("TRO"), Mot. for TRO, Doc. No. 13, which the Court granted, TRO, Doc. No. 48.  The parties proceeded to litigate both the Plaintiffs' TRO Motion, and the parties' Cross Motions for Summary Judgment.  On October 10, 2025, the Court issued its 58-page memorandum and order resolving the litigation.  *AAU v. DOD*, 806 F. Supp. 3d 79 (D. Mass. 2025).  DoD appealed the decision on December 9, 2025, *see* Notice of Appeal, Doc. No. 93, but voluntarily moved to dismiss the appeal on February 10, 2026.  Unopposed Mot. to Voluntarily Dismiss Appeal, *AAU v. DOD*, No. 25-2184 (1st Cir. Feb. 10, 2026).  The First Circuit granted that motion on February 18, 2026.  *AAU v. DOD*, No. 25-2184 (1st Cir. Feb. 18, 2026); Mandate, *AAU v. DOD*, No. 25-2184 (1st Cir. Feb. 18, 2026).

On March 20, 2026, AAU filed this motion for an EAJA award, Pl.'s. Mot. for Att'ys' Fees, Doc. No. 98, requesting $529,937.65 for 626.90 hours of attorney time at $500 per hour, 752.15 hours of attorney time at $266.35 per hour for hours worked in 2025 and $267.46 per hour for hours worked in 2026, and 170 hours of paralegal time at $95 per hour.  *See* Pl.'s Mem. in Supp. of Mot. for Att'ys' Fees, Doc. No. 99 at 21.

---

[1] The other two organizations are American Council on Education ("ACE") and the Association of Public and Land-grant Universities ("APLU").  ACE is composed of more than 1,600 IHEs and related organizations.  Doc. No. 13-2 at ¶ 3.  APLU is composed of more than 230 IHEs and affiliates.  Doc. No. 13-3 at ¶ 3.

2

**LEGAL STANDARD**

An award of fees and expenses under the EAJA is only warranted where (1) the applicant is eligible and is a prevailing party; (2) the government fails to establish that its position, viewed over the entire course of the dispute, was substantially justified; (3) no special circumstances exist to make an award unjust; and (4) the petition is timely.  28 U.S.C. § 2412(d)(1)(A)–(B); *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990).  Even where warranted, the fees must be reasonable.  28 U.S.C. § 2412(d)(2)(A).  Because the EAJA functions as a partial waiver of sovereign immunity by making the United States liable for fees for which it would not otherwise be liable, it "must be strictly construed in favor of the United States."  *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991).

**ARGUMENT**

AAU is not entitled to fees under the EAJA for two reasons.  First, the United States was substantially justified in its position that DoD's governing statutes and regulations authorized DoD to limit reimbursement of indirect costs in grants awarded to IHEs.  Second, because this case is ultimately litigated by and for large IHEs without cost restraints, special circumstances exist to make an EAJA award unjust.  Even if the Court were to award fees to AAU under the EAJA, the fees should be reduced to account for disparities between the amounts billed here and the amounts billed in a similar case, as well as various concerning billing records practices.

## I.   A Fee Award is Not Warranted

### A.  The Government's position was substantially justified.

The EAJA does not authorize fee awards when "the position of the United States was substantially justified."  28 U.S.C. § 2412(d)(1)(A).  To meet this standard, the government's position need not have prevailed.  *See, e.g.*, *Schock v. United States*, 254 F.3d 1, 5 (1st Cir. 2001) ("The mere fact that the government does not prevail is not dispositive on the issue of substantial

3

justification."). It need not even have been "justified to a high degree." *Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Rather, the government's position is "substantially justified" if it was "justified in substance or in the main." *Id.* (quoting *Pierce*, 487 U.S. at 565). The government therefore only needs to show by a preponderance of the evidence that its position had "a reasonable basis in law and fact." *Id.* at 6. The government's "position" in this context is its "case as an inclusive whole, rather than as atomized line-items." *Id.* at 5 (quoting *Comm'r, I.N.S.*, 496 U.S. at 161–62). When analyzing substantial justification, the court therefore must "arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action." *Id.* (citation omitted).

The crux of DoD's position in this case was that the Policy was a lawful exercise of DoD's discretionary grantmaking authority. That core position underlays DoD's arguments that the Court lacked jurisdiction under the Administrative Procedure Act ("APA"), that the Policy was authorized by statute, and that the Policy complied with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (the "Guidance") issued by the Office of Management and Budget ("OMB"). *See* Doc. No. 58 at 27–32, 38–43; *see also Saysana*, 614 F.3d at 3, 6 (government's "position" was issue occupying "the lion's share of the Government's brief"). That position was substantially justified for at least three reasons.

*First*, the issue of DoD's authority to cap indirect costs is a matter of first impression. "When an issue before the court is novel and has little to no precedent, 'courts have found that an award of EAJA fees is not warranted.'" *Michel v. Mayorkas*, 68 F.4th 74, 79 (1st Cir. 2023) (quoting *Saysana*, 614 F.3d at 6). Here, as in *Michel*, the First Circuit had not previously determined the scope of DoD's authority to cap costs in grants or analyzed the Guidance's

mechanism for deviating from negotiated indirect cost rates. *See id.* at 79. DoD therefore was substantially justified in issuing the Policy and defending this litigation. *See Saysana*, 614 F.3d at 6 (government is justified in "seek[ing] specific instruction from the court" on an issue "of first impression among the courts of appeals").[2]

*Second*, historical precedent supported DoD's view that the Policy was lawful. DoD itself capped reimbursement of indirect costs at 50 percent and then 20 percent in the 1940s and 1950s, indicating DoD has long viewed itself as having that authority. *See* Doc. No. 58 at 39. And OMB has capped reimbursement of aspects of indirect costs for the past 35 years. *See id.* at 20. This historical precedent reasonably indicated DoD had statutory authority to cap reimbursement of indirect costs and that rate caps were not discordant with the Guidance.

*Third*, DoD's position had a reasonable basis in law. As DoD argued, 10 U.S.C. § 4001(a) and 41 U.S.C. § 4708 and both granted DoD broad discretionary authority to issue grants. *See id.* at 39–42. DoD reasonably considered that its organic statute, 10 U.S.C. § 4001, provided it the discretion necessary to implement the Policy. On its face, section 4001 grants DoD broad discretion to allocate its appropriations among research grants that it deems "necessary" and "relate to weapon systems and other military needs" or "of potential interest to" DoD. 10 U.S.C. § 4001(a)–(b). Such broad discretionary authority is reflective of DoD's unique and vital mission of national defense. No court had held that the broad grant-making authority

---

[2] The First Circuit's ruling in *Massachusetts v. National Institutes of Health*, 164 F.4th 1 (1st Cir., 2026), does not affect this conclusion. DoD issued the Policy more than half a year before the First Circuit's ruling, which was the first opinion from a circuit court considering the indirect cost rate cap of any agency. The First Circuit's opinion also hinged on the existence of a congressional appropriations rider specific to NIH and NIH's application of the cap to all awards instead of a specific class. *See id.* at 12–18.

granted by Congress to DoD could not be utilized to cap indirect costs when DoD implemented the Policy.

As to section 4708, the United States made similar arguments in defense of the indirect cost rate polices implemented by the Department of Energy ("DOE") and the National Science Foundation ("NSF").  In the DOE case, the district court declined to consider whether section 4708 barred DOE's imposition of its new indirect rate cap policy.  *AAU v. DOE*, 789 F. Supp. 3d 118, 148 (D. Mass. 2025).  The district court similarly declined to decide whether NSF was "statutorily barred from imposing any across-the-board cap on indirect cost rates."  *AAU v. NSF*, 788 F. Supp. 3d 106, 131 (D. Mass. 2025).  And the *NSF* decision was not issued until June 20, 2025.  Thus, when DoD issued the Policy on June 12, 2025, no court, much less a controlling court, had held that section 4708 barred an agency from capping indirect costs.  This Court similarly declined to rule on that issue.  *AAU v. DoD*, 806 F. Supp. 3d at 102 & 107 n.73.

DoD's position that it had the authority to issue the Policy was substantially justified notwithstanding the fact that other indirect cost rate policies issued by other federal agencies had been the subject of litigation, because Policy have significant distinctions from those other policies.  The NIH policy immediately subjected existing awards to the 15 percent indirect cost cap.  *Massachusetts v. NIH*, 770 F. Supp. 3d 277, 290 (D. Mass. 2025) ("*NIH*").  The DOE policy contemplated immediately terminating existing awards that exceeded the 15 percent indirect cost rate.  *DOE*, 789 F. Supp. 3d at 130.  In contrast, DoD's policy, which was issued one month after the Secretary publicly called for a reduction in indirect cost rates, provided almost five months for the agency to renegotiate indirect cost rates with existing grantees.  *See* Doc. No. 1-2 (requiring renegotiation by November 10, 2025).  As such, considering the

6

combination of the different underlying authority and the different implementation process, DoD

was substantially justified in both issuing its distinctive Policy and defending it before this Court.

Though the Court need only consider this core position, *see Saysana*, 614 F.3d at 5–6,

other aspects of the case underscore that DoD's position with respect to the case as a whole was

reasonable. *First*, because standing is "an essential and unchanging part of the case-or-

controversy requirement of Article III" and "an indispensable part of the plaintiff's case," *Lujan

v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992), DoD reasonably questioned whether Plaintiffs

had standing to challenge the part of the Policy that impacted only future grants that had not yet

been awarded. Doc. No. 58 at 23, Doc. No. 80 at 14. *Second*, DoD's view that the Policy was

issued in a way that was not arbitrary and capricious was substantially justified because the

Policy acknowledged it changed DoD's preexisting policy, explained the reason for the change,

and accounted for reliance interests by providing almost five months for DoD and existing

grantees to renegotiate. *See* Doc. No. 62 at 35–37. *Third*, DoD correctly pointed out that, even

if Plaintiffs won on the merits, their request for the extraordinary remedy of permanent

injunctive relief was unwarranted. *See* Doc. No. 80 at 124. *Fourth*, DoD's position also

appropriately raised the jurisdictional boundary between the APA and the Tucker Act. Both the

*NIH* and *DOE* opinions issued before the Policy acknowledged the difficulty of this analysis.

*NIH*, 770 F. Supp. 3d at 292 (noting that "the boundary's precise contours remain elusive" and

that "the bright-line rule between monetary and equitable relief in the Tucker Act–APA context

turns out to be rather dim"); *DOE*, 789 F. Supp. 3d at 132 (the same). While the Court

ultimately resolved the question in favor of Plaintiffs, it was reasonable for DoD to advance this

jurisdictional argument when Plaintiffs only receive indirect cost reimbursements from DoD

when they have federal grants. *Finally*, DoD cooperated to efficiently resolve this litigation,

with a mere four months elapsing from the Plaintiffs filing their complaint to final judgment. Taken together, these positions and actions emphasize that, when considered holistically, DoD's position in the case was substantially justified.

In contrast, AAU's reductive focus on a few of the Court's individual findings and DoD's policy issuance process, *see* Doc. No. 99 at 14–17, misses the mark. By focusing on "whether the agency was right or wrong," AAU evinces a "fundamental misapprehension of what substantially justified means." *Aronov*, 562 F.3d at 94–95. This is because a mere "defect in crafting or execution," such as "an inadequate explanation" does not by itself support an award of EAJA fees. *See Omni Packaging, Inc. v. U.S. I.N.S.*, 940 F. Supp. 42, 46 (D.P.R. 1996) (quotations omitted). Plaintiffs are correct, of course, that this Court struck down DoD's indirect rate cap policy. But that does not render DoD's position substantially unjustified as a whole for the purposes of Plaintiff's EAJA motion, particularly when the Policy was grounded in DoD's authority under two statutes that had not yet received any decisions from the judiciary in a similar context. *Supra* at 5–6; *see Saysana*, 614 F.3d at 6; *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 572 (6th Cir. 2021) (one argument's lack of substantial justification did "not undermine the reasonableness of the government's position as a whole"); *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993) (rejecting "the view that *any* unreasonable position taken by the government in the course of litigation automatically opens the door to an EAJA fee award") (emphasis in original).

Finally, no "string of losses" weighed against DoD's position at the time of the Policy's adoption. Doc. No. 99 at 14. Substantial justification is measured "at the time the government adopted its position," not when "the EAJA motion is decided." *Bowey v. West*, 218 F.3d 1373, 1377 (Fed. Cir. 2000). When DoD adopted the Policy on June 12, 2025, only the *NIH* and *DOE*

8

sessions had *preliminarily* considered the merits of the government's position on similar policies. *See NIH*, 770 F. Supp. 3d at 287; *DOE*, 789 F. Supp. 3d at 153.  But it is axiomatic that "[p]reliminary injunctions . . . do not conclusively resolve legal disputes" because their purpose "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025).  Lack of substantial justification under the EAJA demands more.  *Ryan v. Astrue*, No. 08–cv–17, 2009 WL 929938 at *2 (D.N.H. Apr. 3, 2009) (finding string of decisions existed where four circuits had upheld *final judgments* by district courts).[3]

Moreover, the *NIH* and *DOE* decisions were issued by different sessions of the same Court barely more than two months apart.  Even the two decisions together do not constitute a "string of losses" diminishing the government's position.  *See Saysana*, 614 F.3d at 6 n.2 (two district court decisions issued less than two months apart did not make it "unreasonable for the Government to continue to question their reasoning").  Because DoD's position was substantially justified, AAU's fee request should be denied.

B.  Special circumstances make an award unjust.

In any event, an EAJA fee award is not warranted where "special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  AAU is a lobbyist organization "composed of America's leading research universities."  Doc. No. 13-1 at ¶ 3.  AAU is suing on behalf of its members, who arguably had standing to sue in their own right.  *See NSF*, 788 F. Supp. 3d at 125.

---

[3] Although the government moved to convert the *NIH* and *DOE* decisions into final judgments, it did so to promptly appeal those decisions.  *See* Defs.' Mot. to Convert Order on PI into Order on Perm. Inj. and Final J., *Massachusetts v. NIH*, No. 1:25-cv-10338-AK, Doc. No. 108, at 2 (D. Mass. Apr. 4, 2025); Unopposed Mot. Final J., *AAU v. DOE*, No. 1:25-cv-10912-ADB, Doc. No. 68 at 1 (D. Mass. June 27, 2025).  As stated above, the First Circuit did not rule on the *NIH* appeal until January 2026.  *See* 164 F.4th at 1.

Indeed, AAU is joined in this litigation by twelve of the leading research universities in the United States.  Doc. No. 1 at 1.  But the "EAJA is designed to 'encourage relatively *impecunious* private parties to challenge abusive or unreasonable governmental behavior by relieving such parties of the fear of incurring large litigation expenses.'"  *Sierra Club v. Sec. of Army*, 820 F.2d 513, 516–17 (1st Cir. 1987) (citing *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1315–16 (8th Cir. 1986)) (emphasis added).  Moreover, "in special circumstances the participation of a party ineligible for EAJA fees may make a fee award for other eligible parties unjust."  *La. ex rel. Guste v. Lee*, 853 F.2d 1219, 1225 (5th Cir. 1988).  AAU is far from an impecunious party.  And it is joined by deep-pocketed parties that, regardless of their status as 501(c)(3) organizations, almost certainly employ more than 500 employees, thereby rendering them ineligible for EAJA fees.  As such, a fee award is unwarranted.

The EAJA's legislative history compels this conclusion.  Congress enacted the EAJA to address concerns that parties would be deterred from challenging "unreasonable governmental action because of the expense involved in securing the vindication of their rights.  The economic deterrents to contesting government action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government."  H.R. Rep. No. 96-1418, at 4984 (1980).  The EAJA fee "represents one way to improve citizen access to courts and administrative proceedings [so that] a party does not have to choose between acquiescing to an unreasonable government order or prevailing to his financial detriment. . . . [EAJA] provides individuals an effective legal or administrative remedy where none now exists."  *Id.*, at 4991.  In other words, "'[t]he underlying assumption of the EAJA is that the cost of litigation is a barrier to contesting improper government action.'"  *Sloan v. Pugh*, 351 F.3d 1319, 1322–23 (10th Cir. 2003) (quoting *Ewing v. Rodgers*, 826 F.2d 967, 970–71 (10th Cir. 1987)).

10

An EAJA award is not warranted in this case because the cost of litigation is not a barrier to the courts for AAU (or any other Plaintiff here).  Even without the EAJA award, AAU (and its members) possess the financial means to procure "a large team of attorneys," Doc. No. 99 at 20, across two law firms.  Doc. No. 99 at 22.  Awarding EAJA fees to parties with the "economic power to pursue litigation against the government without being deterred by the costs" undermines the congressional purposes of the EAJA and the "same result occurs when a trade association's membership also contains a number of companies who can readily afford the costs to protect their own interests."  *See Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 674 (6th Cir. 1992) (declining to award EAJA fees to trade organization representing businesses ineligible to receive EAJA awards).

Furthermore, twelve of the Plaintiffs are IHEs without significant financial constraints who almost certainly employee more than 500 people.  As such, their "participation poses a special problem in this case." *Louisiana*, 853 F.2d at 1223.  In *Louisiana*, the Fifth Circuit found that "participation of a party ineligible for EAJA fees may make a fee award for other eligible parties unjust" so when "parties eligible for EAJA fees join parties ineligible for EAJA fees, the district court must account for the free-rider problems that will inevitably exist." *Id.* at 1225.  In reaching this conclusion, the Fifth Circuit analyzed *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383 (2d Cir. 1985), in which the Second Circuit considered whether courts should attribute one plaintiff's ineligibility under the EAJA to all plaintiffs.  The *Sierra Club* majority directed the district court to "determine the number of eligible plaintiffs and award fees based on the ratio of eligible plaintiffs to total plaintiffs." 776 F.2d at 393.  The concurrence went even further, observing that "[t]he EAJA was passed for a specific purpose; to ensure that parties would not be prevented from contesting government action simply because they could not

11

afford to litigate the matter.  When a group of twelve plaintiffs, one of whom has a net worth of over $1 million, join together, congressional concern about access to the courts is not implicated."  776 F.2d at 394 (Meskill, J. concurring).  "Indeed, it seems incongruous to hold that if the ineligible plaintiff alone challenged [the agency action], fees could not be awarded under the EAJA, but because the ineligible plaintiff was joined by less wealthy friends, fees may be awarded."  *Id.*

In short, this litigation does not implicate "disparity between the resources and expertise" of the parties.  AAU represents some of the most prestigious entities in the United States, all of which have substantial endowments.  Indeed, AAU boasts that its "member universities earn billions of dollars in competitively awarded federal funding."  Doc No. 13-1 at ¶ 3.  In 2024, AAU's member universities paid $127.5 billion in salaries to 912,626 employees.[4]  Twelve of these member universities participated as named Plaintiffs, meaning that most Plaintiffs are leading IHEs that earn hundreds of millions in federal funding alone.  Beyond the twelve named Plaintiff IHEs, many IHEs submitted declarations in support of preliminary injunction and summary judgment.  *See, e.g.*, Doc. Nos. 13-19, 13-20, 13-25 (declarations from the Oregon State University, University of Pennsylvania, University of Wisconsin Madison, respectively).  The endowments of these institutions amount to billions of dollars.[5]  Awarding EAJA fees here would be incongruous with the EAJA's statutory purpose.

---

[4] https://www.aau.edu/americas-leading-research-universities-numbers (last visited April 23, 2026).

[5] https://oregonstater.org/thats-billion-with-a-b/ (last visited Apr. 23, 2026) (listing the University of Oregon's endowment at $1 billion); https://investments.upenn.edu/about-us (last visited Apr. 23, 2026) (listing University of Pennsylvania's endowment at $24.8 billion); https://www.advanceuw.org/annual-report/ (last visited Apr. 23, 2026) (listing the University of Wisconsin-Madison's endowment at $4.9 billion).

## II.    AAU's Fees Should Be Reduced

Even if the Court determines an award of attorney fees is warranted, AAU's requested $529,937.65 in fees should be reduced for three reasons. First, enhanced EAJA fees are not appropriate in Administrative Procedure Act cases. The Court should therefore deny AAU's request for an elevated rate of $500 per hour for certain attorneys. Next, AAU fails to carry its burden to justify many of its requested hours by requesting reimbursement for hundreds more hours than it required to litigate a similar case. Finally, various billing records practices and staffing decisions resulted in an inflated number of hours spent litigating. AAU seeks reimbursement for twenty-four attorneys and nine paralegals for a relatively straightforward issue of administrative law with few if any factual disputes and a limited record. Taken together, these issues justify a substantial decrease in the number of hours allowed by the Court.

### A.  AAU has not shown it is entitled to an increased hourly fee.

The EAJA establishes a statutory cap of $125 for attorney fees. 28 U.S.C. § 2412(d)(2)(A)(ii). "The statutory cap is, broadly speaking, designed to hold down the government's costs by providing modest compensation, with exceptions." *Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 491 (1st Cir. 2000). This cap reflects the dual purposes of the EAJA: "ensuring representation for those who need it and *minimizing the cost of such representation to the taxpayers*." *Williams v. Barnhart*, 206 Fed. App'x 378, 379 (5th Cir. 2006) (emphasis added). As such, exceeding the statutory cap may be appropriate where "some distinctive knowledge or specialized skill [is] *needful* for the litigation in question," *Atl. Fish Spotters Ass'n*, 205 F.3d at 491–92 (quoting *Pierce*, 487 U.S. at 572) (alteration in original), and "it is necessary to pay more than $125 to obtain attorneys with that skill or knowledge." *Id.*[6]

---

[6] Exceeding the cap may also be permissible when the court determines that an increase in the cost of living justifies a higher fee. 28 U.S.C. § 2412(d)(2)(A)(ii). Adjusted for cost of living,

This is a high bar, because "the question is not whether counsel's experience in [applicable law] is helpful or productive but whether it is *essential* for competent representation. *Id.* at 492 (emphasis added).

The First Circuit has already spoken on the impropriety of enhanced EAJA fees in Administrative Procedure Act cases. Although "[m]odern administrative law involves, in practically every area, a tangle of discrete regulations, various precedents, a bureaucratic vocabulary and some background knowledge . . ." it requires no specialized skill to "learn enough about the particular controversy to litigate in the area adequately. *Id.* at 492. On the contrary, "[t]o assess the Secretary's justifications and seek to puncture them by reasoning and publicly available data is to deploy exactly the skills taught in law school." *Id.*; *see also Lewis v. Sec'y of Health & Hum. Servs.*, 370 F. Supp. 3d 267, 273 (D. Mass. 2019). Aside from invoking its regulatory nature, AAU fails to demonstrate that this litigation required anything beyond the typical legal skills that any competent attorney possesses. Doc. No. 99 at 19–20. Mere knowledge of a regulatory scheme is insufficient to justify an enhanced rate.

Resisting this conclusion, AAU's attorneys couple this claimed "experience and expertise" with the need to move quickly lest their clients suffer irreparable harm. Doc. No. 99 at 19. But plaintiffs bringing APA cases against the United States routinely move for preliminary injunctions by raising the specter of irreparable harm. If regulatory knowledge coupled with the threat of irreparable harm were sufficient to justify an upwards rate increase, then *the majority* of prevailing APA cases would qualify for an upward adjustment. Because the Supreme Court has already decried an interpretation of the EAJA's upward adjustment language

---

the statutory cap was $266.35 in 2025 and $267.46 in 2026. Doc. No. 99 at 18. The United States does not oppose reimbursement at these rates.

14

that would "effectively eliminate [the EAJA's rate cap]," *Pierce*, 487 U.S. at 571, AAU's argument sweeps too broadly.

In any event, AAU's assertion that its attorneys' skills were necessary to "file and litigate this challenge quickly," Doc. No. 99 at 19, is belied by their own timesheets. DoD issued the Policy on June 12, 2025. AAU's timesheets indicate they began work on this case on April 15, 2025, almost *two months* before DoD issued the Policy. Doc. No. 98-4 at 2. Simply put, any competent attorney can file an APA complaint and motion for TRO with almost two months of advance notice. Certainly, any team of twenty-four attorneys should be capable of doing so. As such, all attorneys should receive the statutory cap rates for 2025 and 2026.

B. The number of hours should be reduced.

Furthermore, even if the Court is inclined to award EAJA fees to AAU, the Court should reduce the hours awarded. "The plaintiffs bear the burden of establishing the reasonableness of the rates and hours submitted in their application for fees." *Mason v. Me. Dep't of Corr.*, 387 F. Supp. 2d 57, 60 (D. Me. 2005). While reviewing an EAJA request, "[d]istrict courts have broad discretion in determining reasonable fees." *Sinclair v. Berryhill*, 284 F. Supp. 3d 111, 116 (D. Mass. 2018). AAU's requested fees are overstated for four reasons. First, while AAU claims that its attorneys possessed specialized knowledge and skills that warranted a higher rate, Doc. No. 99 at 19, AAU's attorneys billed 500 more hours in this case than in a prior case that AAU claims is substantially similar. AAU never explains this discrepancy. Second, many of the time entries are block-billed. Third, other entries are vague. Fourth, the sheer amount of time spent "corresponding" suggests potential overstaffing inefficiencies that should not be compensated by an EAJA award.

15

1.  *Plaintiff's Hours are Inflated*

AAU's request for reimbursement of 1,379.05 attorney hours and 170 paralegal hours is excessive due to the overlap in arguments raised in this case and other cases challenging policies that Plaintiff posits were "materially identical."  Doc. No. 99.  Where there is significant overlap in the issues briefed in separate documents, a reduction in hours billed may be warranted.  *See, e.g.*, *Rosario v. Comm'r of Soc. Sec.*, No. 21 Civ. 03811, 2022 WL 17669939, at *2 n.3 (S.D.N.Y. 2022) (reducing hours as "unreasonable and duplicative" where "the arguments and authority raised" were identical to other briefing filed by plaintiffs).  Indeed, a reduction of up to fifty percent is appropriate where significant overlap exists between two cases.  *See Stanback v. Shinseki*, No. 05–1392, 2011 WL 2110213, at *6 (Table) (Vet. App. May 27, 2011) (reducing fee award by fifty percent to account for work on identical case).

Here, far from requesting payment for *fewer* hours as compared to previous cases challenging "materially identical policies," AAU requests payment for an additional *500 hours*. On October 30, 2025, AAU moved for attorney fees under the EAJA for their work on *NSF*. Mot. for EAJA Fees, Doc. No. 90, *NSF*, No. 1:25-cv-11231 (D. Mass. 2025).  According to AAU, the *NSF* case dealt with a "materially identical policy" to the one at issue in this case. Doc. No. 99.  In *NSF*, AAU requested payment for 877.9 hours of attorney work, and 89.5 hours of paralegal work.  Memo. in Support of Mot. for EAJA Fees at 16, Doc. No. 91, *NSF*, No. 1:25-cv-11231 (D. Mass. 2025).  In contrast, here AAU requests payment for 1,379.05 hours of attorney work, and 170 hours of paralegal work.

AAU offers no explanation for this disparity.  The authorities relied upon in each case substantially overlap.  A court may reduce hours for overlap in work on two separate briefs by comparing the authorities cited in each brief. *D.S. v. Acting Comm'r of Soc. Sec. Admin.*, NO.

16

1:19-CV-232, 2022 WL 2342574, at *3 (Apr. 13, 2022) (listing the authorities used by both briefs).  Plaintiff's motion for a TRO in this case cited thirty cases.  Doc. No. 39, Mot. for a TRO, at iii–iv.  Nineteen of those cases overlapped with the cases Plaintiffs cited in their *NSF* briefing.  Mem. in Supp. of Mot. for PI and SJ, at ii–iii, Doc. No. 41, *NSF*, No. 1:25-cv-11231 (D. Mass. 2025).  Similarly, Plaintiffs' TRO Motion cited 26 regulatory provisions, 17 of which overlapped with the NSF briefing.  *Compare* Doc. No. 39, Mot. for TRO, at vi–vii, *with* Mem. in Supp. of Mot. for PI and SJ, at iv–v, *NSF*, No. 1:25-cv-11231 (D. Mass. 2025).

In sum, AAU's attorneys repurposed, or at least relied upon, significant portions of prior briefing while litigating this case.  Yet, they billed *500 hours more* in attorney time and *80.5 hours more* in paralegal time in this case than the prior case.  The Court should reduce the billed hours by half, down to 689.525 attorney hours, and 85 paralegal hours.  *See Stanback*, 2011 WL 2110213, at *6 (reducing hours by fifty percent where significant overlap existed between the briefing).  AAU simply has not met its burden to show the reasonableness of the hours requested when, by its own words, it faced here a "materially identical policy."

### 2.  *AAU's Attorneys Block-Billed Their Hours*

Additionally, many of the billing entries submitted by AAU's attorneys lack specificity and do not permit the Court to evaluate the propriety of EAJA reimbursement.  Where "time records [] are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues. [] In such a circumstance, the court may adjust those entries to achieve an equitable result." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008).  One such form of poor timekeeping is "block billing" which is the "time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Torres-*

17

*Rivera v. Espada-Cruz*, No. 99-1272, 2007 WL 906176, at *2 (D.P.R. Mar. 22, 2007), *aff'd*, 524 F.3d 331, 340 (1st Cir. 2008).  In such circumstances, "district courts have broad discretion in reducing fee requests," and the "First Circuit has endorsed across-the-board global fee reductions as an appropriate remedy for block billing practices."  *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 355 (D. Mass. 2013).  These across-the-board reductions of "fifteen to twenty percent have been fairly common penalties for block billing in this circuit."  *Id.*  Here, the attorneys blocked billed 154.95 hours.  Exhs. A, B.  This "prominently feature[d] evidence of block billing" justifies an across-the-board reduction of 15 percent.[7]  This reduction would remove 86 hours.[8]

### 3.  *Many of the Entries are Vague*

While many of the other entries are not necessarily "block billed," they nevertheless are drafted so vaguely as to defy effective judicial review.  Such entries "lump together multiple distinct activities," *N.H. Hosp. Ass'n v. Azar*, Civ. No. 15-cv-460, 2019 WL 1406631, at *14 (D.N.H. Mar. 28, 2019), such that they do not "allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent," *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) (quoting *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986)).  Where this is the case, a reduction of fifty percent is warranted.  *Id.* at 944.  Here, the sheer

---

[7] To the extent AAU intends to rely on *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. EDCV 16-600, 2020 WL 8174627 (C.D. Cal. Nov. 20, 2020) and *PQ Labs, Inc. v. Qi*, No. 12-0450, 2015 WL 224970 (N.D. Cal. Jan. 16, 2015) to resist this conclusion, any such reliance should fail.  *WB Music* did not explain what amount of block-billing or otherwise vague time entries was permissible.  *WB Music Corp.*, 2020 WL 8174627, at *3.  *PQ Labs* declined to reduce the plaintiffs' award case because other courts in its district permitted block-billing in the EAJA context.  Not so in the District of Massachusetts.  *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 355 (D. Mass. 2013).

[8] As is common practice in the First Circuit, the global reduction applies *after* all other reductions are applied.  *See id.*

number of attorneys assigned to this case led to duplicative communications and conferences between those attorneys, *see infra* at 19.  But many of the entries provided by AAU's attorneys obscure the severity of this problem by grouping together substantive work and communications. Exhs. E, F.

Other entries are so general that they are difficult to assess.  *See New Jersey v. EPA*, 703 F.3d 110, 115 (D.C. Cir. 2012) (deeming entries like "draft reply brief" and "continue draft of mercury brief" inadequate when used to describe many hours); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970–71 (D.C. Cir. 2004) (deeming "identical one-line entry" of "research and writing for appellate brief" insufficient to adequately describe time).  Here, AAU's request contains numerous vaguely described entries such as "[c]ontinued revising draft complaint" and "[r]eviewed and revised draft complaint and PI brief."  Exh. E.

In sum, these vaguely described entries account for twenty-seven percent of all the time billed by attorneys. A reduction by fifty percent of twenty-seven percent of Plaintiffs' now reduced total hours, *see* supra at 16, results in a reduction of 93 hours of attorney time.  *See New Jersey*, 703 F.3d at 115 (finding that vague description coupled with other overbilling practices justified hour reduction of 75 percent).

4.  *Plaintiff's Team of Attorneys Was Unnecessarily Large*

AAU also unreasonably seeks reimbursement for the large number of attorneys Plaintiffs retained to litigate this case.  A "trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism."  *Cano v. Saul*, 505 F. Supp. 3d 20, 30 (D. Mass. 2020) (quoting *AutoZone*, 934 F. Supp. 2d at 350).  This skepticism flows from the judicial recognition "that at some point, allocating portions of a task among group members ceases to raise productivity and instead begins to hinder it."  *Miller v.*

19

*Holzmann*, 575 F. Supp. 2d 2, 44 (D.D.C. 2008); *Wild Fish Conservancy v. Thom*, No. C20-417, 2025 WL 3259740, at \*7 (W.D. Wash. May 19, 2025) (noting that "[w]hile internal strategy meetings can enhance efficiency, an overabundance of redundant or unnecessary conferences diminishes productivity").  Indeed, "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001) (discussing attorney fees owed under a different statute).  Here, Plaintiffs' law firms assigned twenty-four lawyers and nine paralegals to this case.  Doc. No. 98-6.  As an apparent result of this overstaffing, AAU's attorneys billed 188.85 hours corresponding, or roughly thirteen percent of the time billed.  Exhs. C, D.  These hours should receive a twenty-five percent reduction on top of the already-reduced overall total. *See* supra at 16.  In total, these reductions would reduce the attorney hours billed by 23.

\* \* \*

In sum, AAU seeks reimbursement for 1,379.05 hours of attorney time and 170 hours of paralegal time.  Even if the Court determines that AAU is entitled to fees under the EAJA, the Court should reduce these hours by 891.55 attorney hours to a total of 487.5 attorney hours.  The Court should also reduce the number of paralegal hours to 85.  At rates of $266.35 per attorney hour in 2025, $267.46 in 2026, and $95 per paralegal hour, the proper award is $137,926.18.

**CONCLUSION**

For these reasons, Defendants respectfully request that the Court deny AAU's motion for attorney fees under EAJA in full, or, alternatively, award a reduced amount of $137,926.18

20

Dated: April 24, 2026

BRETT A. SHUMATE
Assistant Attorney General

LEAH B. FOLEY
United States Attorney

BRENNA E. JENNY
Deputy Assistant Attorney General

KIRK T. MANHARDT
Director

MARC S. SACKS
Deputy Director

/s/ *I-Heng Hsu*
BETHANY R. THERIOT (D.C. Bar 1022065)
I-HENG HSU (NY Reg. No. 4904033)
Trial Attorneys
U.S. Department of Justice, Civil Division
Corporate/Financial Litigation Section
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044-0875
Tel: (202) 307-0244
bethany.theriot@usdoj.gov
i-heng.hsu@usdoj.gov

*Attorneys for Defendants*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: April 24, 2026                          /s/ *I-Heng Hsu*
                                               I-Heng Hsu
                                               Trial Attorney

22